Dennis James TRIGG, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee

2013–SC–000785–MR

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

324

Counsel for Appellant: Shannon Renee Dupree, Assistant Public Advocate.

Counsel for Appellee: Jack Conway, Attorney General of Kentucky, Leilani K.M. Martin, Assistant Attorney General.

## OPINION OF THE COURT BY JUSTICE VENTERS

A Barren Circuit Court jury found Appellant, Dennis James · Trigg, guilty of first-degree trafficking in a controlled substance and possession of drug paraphernalia. Appellant was sentenced to twenty years' imprisonment for the trafficking charge and assessed a $500.00 fine for the drug paraphernalia charge. On appeal, he asserts that: (1) the Commonwealth impermissibly introduced an incriminating oral statement that had not been disclosed to Appellant pursuant to RCr 7.24(1); (2) the trial court erred when it allowed testimony commenting on Appellant's pre-arrest silence; and (3) the $500.00 fine should be vacated. For the following reasons, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Two suspects arrested for illegal drug possession in Glasgow, Kentucky, told police that they had purchased crack cocaine from Appellant. In response, Glasgow police officers obtained a warrant to search the residence at 514 East College Street, believing it to be Appellant's home. When Officers Mike Burton, Nick Houchens, and others arrived at the scene to execute the warrant, Appellant opened the door. He remained on the premises throughout the three-hour search. His mother apparently owned the home, but she was passed out on a couch surrounded by liquor bottles.

During the search, police examined a man's suit coat that was hanging in a bedroom closet. In the pocket of the coat, they found wrapped in a sock a quantity of crack cocaine, two boxes of razor blades, a pill, and cash totaling $920.00. They also found $336.00 and a box of plastic sandwich bags under the bed in the same room. Consequently, Appellant was arrested.

Appellant did not testify at trial, but through the testimony of friends and relatives he presented a defense that he did not reside in his mother's East College Street home, that he lived mainly at the homes of his girlfriend and his father, that he stayed with his mother only when stormy weather threatened because she was afraid of storms,[1] and that the items found during the search did not belong to him.

During Officer Houchens's testimony, the prosecutor asked if at any time during the search, Appellant ever said, "Look, I don't even live here," or words to that effect. Appellant's objection to that question was overruled, and the prosecutor asked again if Appellant ever said during the search, "This isn't where I live, this isn't my residence." Houchens responded that Appellant had not said anything to that effect.

The same inquiry was directed to Officer Burton. He agreed that Appellant never denied that he lived at the searched premises. The Commonwealth also asked Burton why he thought the bedroom where the contraband was found belonged to Appellant. Burton responded that during the search he asked Appellant whose room it was, and Appellant admitted that it was his. Appellant's trial counsel objected to that testimony because this incriminating statement was not disclosed by the Commonwealth during pre-trial discovery. The trial court overruled Appellant's objection.

Ultimately, the case went to jury and Appellant was convicted of trafficking in a controlled substance (cocaine) and possession of drug paraphernalia. He was acquitted on another charge, possession of

---

1. Police testimony confirmed that the weather was stormy on the night of the search. ´

hydrocodone. Appellant was sentenced as noted above. This appeal followed.

Appellant presents three arguments on appeal. First, he contends that the admission of an incriminating statement, which the Commonwealth had not disclosed during discovery, rendered him unable to prepare an adequate defense. Second, he asserts the Commonwealth's use of his silence during the search violated his Fifth Amendment privilege against self-incrimination. Finally, Appellant also argues that the $500.00 fine should be vacated. We address each argument in turn.

## II. THE COMMONWEALTH'S FAILURE TO DISCLOSE APPELLANT'S INCRIMINATING STATEMENT REQUIRES REVERSAL

■ We first consider Appellant's argument that his trial was fundamentally flawed when the trial court allowed the introduction of evidence that Appellant told police that the bedroom in which the contraband was found was "his" room. Specifically, Appellant contends this evidence should have been excluded from the trial because, in violation of RCr 7.24(1), the Commonwealth had failed to disclose the statement during pre-trial discovery. The Commonwealth denies that RCr 7.24(1) was violated and asserts in the alternative that any error associated with admission of the undisclosed statement was harmless. We agree with Appellant and now hold that his convictions must be reversed.

RCr 7.24(1) provides in pertinent part that prior to trial, "the attorney for the Commonwealth shall disclose the substance, including, time, date, and place, of any oral incriminating statement known by the attorney for the Commonwealth to have been made by a defendant to any witness...." The Commonwealth first

contends that RCr 7.24 is not implicated here because Appellant's oral incriminating statement was not "known by the attorney for the Commonwealth" in advance of the trial. The Commonwealth notes that the prosecutor had not, prior to trial, asked the police investigators how they had determined which bedroom was Appellant's, and thus never learned of Appellant's statement until its fortuitous revelation at trial. We have no reason to doubt that. This is not a matter of prosecutorial misconduct and it is not claimed to be such.

■ However, our case law is clear: the Commonwealth cannot claim ignorance in order to avoid an RCr 7.24(1) violation. We have held that when a testifying law enforcement officer knows of a significant statement that was made, that knowledge is properly imputed to the Commonwealth, regardless of whether the prosecuting attorney had actual knowledge of the statement. *Anderson v. Commonwealth*, 864 S.W.2d 909, 912 (Ky.1993). In the context of evaluating a similar discovery violation involving RCr 7.26(1), requiring the disclosure of *witness* statements, we said in *Anderson*:

> It is no answer to say the Commonwealth [sic] Attorney is "unaware" of a statement, if the statement was taken by the investigating officer in charge of the case. In such circumstances the knowledge of the detective is the knowledge of the Commonwealth. The Commonwealth's Attorney should advise the police that such evidence must be produced, and, he bears the same responsibility for producing the statement as would pertain if it were in his file.

*Id.* at 912–13; *see also Ballard v. Commonwealth*, 743 S.W.2d 21, 22 (Ky.1988) (holding that a defendant had been denied due process when the Commonwealth failed to disclose during discovery an ex-

culpatory report unknown to the Commonwealth's Attorney but known by an investigating officer who served as a witness for the Commonwealth).

Exclusion of the suddenly revealed evidence, at least in this case, would not be unfairly prejudicial to the Commonwealth. The Commonwealth's Attorney was prepared to prove his case without it; excluding the evidence simply leaves the prosecutor with the same evidence he expected to present when the trial started. If the police officers did not regard Appellant's statement as sufficiently important to alert the Commonwealth's Attorney of its existence prior to trial; and if, prior to trial, the Commonwealth's Attorney did not ask the officers what statements Appellant had made during the search, then we must presume that the probative value of the evidence is low relative to its prejudicial effect. Little harm comes to the Commonwealth's case by its exclusion. At worst, the prosecutor is consigned to presenting the evidence that he intended to present when the trial started.

However, the prejudicial effect upon the defendant of a sudden, mid-trial revelation of what is tantamount to a confession is manifest. Its propensity to undermine his prospects for a fair trial cannot be casually regarded or summarily dismissed. Prejudice is apparent in two ways.

■ First, as we held in *Chestnut v. Commonwealth,* "[t]he Commonwealth's ability to withhold an incriminating oral statement through oversight, or otherwise, should not permit a surprise attack on an unsuspecting defense counsel's entire defense strategy. Such a result would run afoul of the clear intent of RCr 7.24(1)." 250 S.W.3d 288, 296 (Ky.2008).

In *Chestnut,* the defendant was linked to a burglary only by circumstantial evidence until the Commonwealth was allowed to introduce a previously undisclosed oral statement allegedly made by the defendant implicating himself in the crime. *Id.* at 298–99. We held that failure to disclose the incriminating statement violated RCr 7.24(1) and "fatally undermine[d]" and "gutted" the defendant's entire defense. *Id.* at 297, 299. As such, we concluded that the trial court abused its discretion in admitting the statement, and we reversed the defendant's conviction. *Id.* at 299; *see also Grant v. Commonwealth,* 244 S.W.3d 39 (Ky.2008) (holding that the Commonwealth's failure to disclose a tape recording of an incriminating jailhouse telephone conversation rendered the defendant unable to make a well-informed decision about whether to testify and constituted reversible error).

■ But "undermining" the planned defense is not the only prejudicial effect arising from the admission of undisclosed self-incriminating statements. The fundamental fairness implicit in RCr 7.24(1) is our recognition that when the government claims that the defendant's own words should convict him, the defendant must have adequate notice so that he can present his own evidence (1) refuting the testimony that he made the inculpating statement; or (2) explaining the context in which the statement was made to dispel its incriminating impact. That will typically require effective cross-examination of the witness revealing the statement, and pretrial inquiry of other witnesses who may have a different perspective on the making of the alleged statement.

■ It is universally acknowledged that "[t]he opportunity for cross-examination ... is critical for ensuring the integrity of the fact-finding process. Cross-examination is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *Kentucky v. Stincer,* 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (*quoting Davis v.*

*Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). The credibility of a witness's memory about what was supposedly said months earlier by a criminal suspect must be fairly subject to challenge. Inquiry by effective cross-examination or by pre-trial investigation into circumstances surrounding the putative statement is all the more important when the statement was not recorded nor otherwise memorialized.

RCr 7.24(1) entitled Appellant to know in advance of trial that the Commonwealth would present testimony attributing to him a self-incriminating statement. Without the fair notice required under RCr 7.24(1), the accused individual who is suddenly confronted with the claim that he made incriminating remarks must cobble together a make-shift response or allow the testimony to go unchallenged. Either way, Appellant's counsel was unfairly hindered in his ability to prepare and present a proper defense and to effectively challenge the accuracy of the testimony through cross-examination.

The statement attributed to Appellant was the only direct evidence that tended to establish his possessory interest in the suit coat hanging in the closet and thus, to the contraband found in the coat pocket. Neither of the two individuals who told police that Appellant had sold them cocaine identified the house at 514 East College Street as Appellant's residence. Moreover, Appellant presented several witnesses who testified that he lived elsewhere and his driver's license stated that his home address was 506 South Franklin Street, Glasgow, Kentucky, which was his father's home around the block from 514 East College Street. The coat was not introduced into evidence; nor was there any evidence establishing its size or that it would even fit Appellant. It was the Commonwealth's duty under RCr 7.24(1) to learn of Appellant's incriminating statement and to dis-

close the substance, time, place, and date of it to Appellant's counsel. The failure to perform this duty was a discovery violation.

█ This Court has held that "a discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were disclosed the result would have been different." *Chestnut* at 297. Additionally, we have held that when an undisclosed statement makes it doubtful that defense counsel would have proceeded in the same manner at trial, then reversal is required. *Id.* at 298; *Akers v. Commonwealth,* 172 S.W.3d 414, 417–18 (Ky. 2005). Furthermore, "absent the protections of RCr 7.24(1), there is nothing to curb the errant prosecutor who may strategically violate the rule in an attempt to surprise a defendant with an undisclosed statement." *Chestnut* at 298. Here, the nondisclosure rendered defense counsel unable to make a well-informed decision about the most appropriate defense strategy, and there is a reasonable probability that defense counsel would not have pursued the same theory had he been apprised of Appellant's alleged statement. *See Id.* at 297–98. Thus, pursuant to the *Chestnut* and *Grant* line of cases, we hold that the trial court abused its discretion in admitting the undisclosed statement, and that the error was not harmless. Consequently, reversal of Appellant's conviction is necessary.

Having reversed on these grounds, we will examine Appellant's remaining allegations of error only to the extent they are likely to recur on retrial.

## III. TESTIMONY OF APPELLANT'S SILENCE DURING THE SEARCH OF THE RESIDENCE WAS IMPROPER

█ In the preceding section, we addressed the admission of testimony re-

garding what Appellant *said* to officers during the search. Because it may arise upon retrial, we now address the admission of testimony regarding what Appellant *did not say* to officers during the search—that is, his silence.

Over Appellant's objection, police officers were permitted to testify that, despite Appellant's presence during the three-hour search, he never told the officers, "Look, I don't even live here," or "This isn't where I live, this isn't my residence;" or any other words disclaiming his residence upon those premises.[2] Appellant argued to the trial court that this use of his silence as an admission of guilt violated his constitutional right to remain silent. The trial court overruled Appellant's objection and further addressed the admissibility of the officer's testimony with this comment:

> It is, you know, if somebody ... it is somewhat unusual if someone came to my house and said, 'we got a search warrant here to search your house,' I think I would probably say, 'But it ain't my house.'

Appellant's claim that this use of his silence violated his rights under the Fifth Amendment rests largely upon *Green v. Commonwealth,* 815 S.W.2d 398, 400 (Ky. 1991), where we held that despite the defendant's failure to invoke his right to remain silent, it was error for the Commonwealth to comment on his silence after he was placed under arrest by police. *Id.* at 399. *Green,* however, involved post-arrest circumstances in which the right to remain silent had clearly attached. Here, Appellant had not been arrested and he was not in police custody during the relevant time period. *Green* is, at best, a difficult fit.

The Commonwealth relies upon the opinion of the United States Supreme Court in *Salinas v. Texas,* —— U.S. ——, 133 S.Ct. 2174, 186 L.Ed.2d 376 (2013) and this Court's opinion in *Baumia v. Commonwealth,* 402 S.W.3d 530, 536 (Ky.2013). Neither of those cases serves well as a precedent for resolving the issue at hand. *Baumia* involves a pre-arrest and pre-*Miranda* warning situation but unlike the instant case, the defendant in *Baumia* did not remain silent. She very audibly and colorfully announced her refusal to speak to police. It was that vocal invocation of her right to remain silent, and *not* her silence, that we held could not be used as evidence of her guilt. *Id.* at 536.

Citing to *Salinas,* the Commonwealth argues that the use of Appellant's pre-arrest, pre-*Miranda* warning silence as substantive evidence of guilt was permissible because he never put officers on notice that, by remaining silent during the search, he was invoking his Fifth Amendment right. That position rests exclusively upon Justice Alito's opinion in *Salinas,* joined by only two other justices: "It would have been a simple matter for [the defendant] to say that he was not answering the officer's question on Fifth Amendment grounds. Because he failed to do so, the prosecution's use of his noncustodial silence did not violate the Fifth Amendment." *Salinas,* 133 S.Ct. at 2180. The opinion of three justices does not establish a precedent.[3]

---

**2.** In contrast with the inference suggested by the Commonwealth, it is entirely plausible that an innocent person in Appellant's position *would not* disclaim residency if the police were searching where he did not live, lest they abandon the misguided search and refocus their attention upon his true residence.

**3.** *See* 20 Am.Jur.2d Courts § 138. ("A plurality opinion is said not to be a binding precedent, or, by a related view, to be nonbinding, but of limited precedential value as to the holding but not as to the rationale."); and 21 C.J.S. Courts § 198, ("The principles enunciated in an opinion do not constitute binding precedent if a majority of the court concurred

■ Justices Thomas and Scalia, concurring with Justice Alito in result only, concluded that "Salinas' claim would fail even if he had invoked the [Fifth Amendment] privilege because the prosecutor's comments regarding his precustodial silence did not compel him to give self-incriminating testimony." *Id.* at 2184. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]' " *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

The "narrowest grounds" explaining the result in *Salinas* is not readily apparent: three justices agree that the Fifth Amendment was not violated because the defendant did not expressly invoke the right, while two say it was not violated because, under the particular facts of the case, the defendant did not have a Fifth Amendment right.

We have not previously addressed the Fifth Amendment implications of using a defendant's silence under the circumstances before us in this case, and neither has the United States Supreme Court.[4] We are, however, able to resolve the issue on more preferable, non-constitutional grounds, in accordance with the principle that constitutional adjudication should be avoided unless it is strictly necessary for a decision in the case.[5]

Regardless of the constitutional implications of the testimony that Appellant remained silent during the search, like every other form of evidence, to gain admission at trial the testimony had to satisfy the applicable rules of evidence. The only evidentiary rule providing for the introduction of silence as an admission of guilt is the common law doctrine of adoptive admissions by silence, now codified in Kentucky law as KRE 801A(b)(2).[6] The trial court's analysis of Appellant's objection— "if someone came to my house and said, 'we got a search warrant here to search your house,' I think I would probably say, 'But it ain't my house.' "—is a clear manifestation of the doctrine of adoptive admissions. In this case, however, an essen-

---

merely in the result, but not in the opinion on a particular issue.") *See also J.A.S. v. Bushelman,* 342 S.W.3d 850, 853 (Ky.2011) ("[I]f a majority of the court agreed on a decision in the case, but less than a majority could agree on the reasoning for that decision, the decision has no *stare decisis* effect.")

4. The facts of *Salinas* differ from the instant case in at least one critical aspect. In *Salinas,* the defendant voluntarily went to the police station to answer police questions about a crime, and in doing so he waived his right to remain silent. Then, only after the questioning became accusatory and discomfiting did he suddenly reverse course and decline further comment. In contrast, Appellant's "silence" occurred during a compulsory search of the premises upon which he was located; his silence was not preceded by his consent to a voluntary interview.

5. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable." *Stephenson v. Woodward,* 182 S.W.3d 162, 168 (Ky. 2005) (*quoting Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)).

6. In *Salinas,* Justice Alito concluded that Salinas's silence was admissible as a party's admission by silence under Fed. Rule of Evid. 804(b)(3): "Statements against interest are regularly admitted into evidence at criminal trials [...] and there is no good reason to approach a defendant's silence any differently." *Id.,* at 2183.

tial prerequisite for the application of the rule is missing.

KRE 801A(b)(2) provides, in pertinent part:

> (b) Admissions of parties. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is:
>
> > (2) A statement of which the party has manifested an adoption or belief in its truth[.]

■ Of critical importance in applying the rule is this: *it is not the silence itself that constitutes the "statement" to be admitted into evidence.* The "statement" that the rule admits into evidence is the audible expression of *another* person, "the declarant," whose statement the defendant heard and to which the defendant's silence "manifested an adoption or belief in its truth."

■ For example, *Marshall v. Commonwealth,* 60 S.W.3d 513, 521 (Ky.2001), holds that "[w]hen incriminating statements are made in the presence of an accused under circumstances that would normally call for his denial of the statements, and it is clear that the accused understood the statements, yet did not contradict them, the statements are admissible as tacit, or adoptive admissions."

■ To qualify as an adoptive admission through silence under KRE 801A(b)(2), the defendant's silence must be a response to "statements [of another person, the declarant] that would normally evoke denial by the party if untrue." ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 8.20[3][b] at 597 (5th ed. 2013) (citing *Commonwealth v. Buford,*

197 S.W.3d 66, 73–73 (Ky.2006)). We explained in *Buford*:

> [S]everal conditions must be satisfied before a statement can be attributed to a party because of silence. A statement may not be admitted as an adoptive admission unless it is established that the party heard and understood the statement and remained silent. Additionally, a statement is not admissible if conditions that prevailed at the time of the statement deprived the party of freedom to act or speak with reference to it.

197 S.W.3d at 74.

■ Therefore, under the rule, silence is admissible *only* in conjunction with the accusatory out-of-court statement, because it is only in the context provided by the out-of-court statement that any meaning can be ascribed to the silent response. Without the declarant's antecedent statement, the corresponding silence is devoid of any meaning at all. Silence derives its meaning and its evidentiary relevance only in context provided by the out-of-court statement that preceded it.

■ The Commonwealth concedes in its brief that Appellant's failure to disclaim an interest in the premises being searched, i.e., his silence, was not a response to any accusatory or incriminating "statement" made in his presence.[7] The admission of Appellant's silence, in the absence of a declarant's statement to which Appellant's silence might fairly be regarded as an incriminating response, is a misapplication of KRE 801A(b)(2). Here, the jury was allowed to infer culpability simply because Appellant did not protest the execution of a search warrant or disavow his interest in the searched premises. *See* ROBERT G.

---

**7.** The Commonwealth makes this concession to emphasize the point that Appellant's silence was not the effect of any "official compulsion" keeping Appellant silent during the search.

LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 8.20[3][a] at 597, *quoting Griffith v. Commonwealth*:

> *When accusatory or incriminating statements are made* in the presence and hearing and with the understanding of the accused person and concerning a matter within his knowledge, under such circumstances as would seem to call for his denial and none is made, *those statements,* and the fact that they were not contradicted, denied, or objected to, become competent evidence against the defendant. *They derive their competency from the theory and upon the broad principle that the statements were impliedly ratified and adopted by the accused as his own* and constituted a tacit admission on his part though an inaudible one.

250 Ky. 506, 63 S.W.2d 594, 596 (1933) (emphasis added). Without the *"accusatory or incriminating statements,"* there is nothing that one's silence may be said to have *"impliedly ratified and adopted as his own."* If silence in the absence of an accusatory or incriminating prefatory comment is deemed to have meaning and relevance, then every person at the scene of a crime and every person detained or arrested by police must immediately proclaim his innocence so that his failure to do so or his silence will not later be construed as a confession.

▬ Professor Lawson's treatise warns that "[s]ilence with respect to a statement will always have some ambiguity, which creates a need for cautious use of the concept and thoughtful consideration of the circumstances surrounding that silence." ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 8.20[3][b] at 597. "[B]ecause of the powerful nature of such evidence, and the dubious reliability associated with it, trial judges should guard against any possible abuse and hold the admissibility of such evidence to exacting standards." *Buford,* 197 S.W.3d at 75 (Lambert, C.J., concurring).

We agree with the Commonwealth that questioning the police officers about their observation of Appellant's demeanor and appearance during the search was permissible. But, the use of Appellant's silence under the theory that his failure to spontaneously protest the search by disclaiming his interest in the premises is indicative of guilt violates KRE 801A(b)(2), and is not otherwise admissible under the Rules of Evidence. Upon retrial, Appellant's silence during the search shall not be used as an admission of his residence upon the searched premises.

## IV. THE IMPOSITION OF THE FINE

The trial court imposed upon Appellant a fine of $500.00 for the misdemeanor offense of possession of drug paraphernalia. Appellant's final argument is that the imposition of the fine was error because he had been determined to be an indigent, or a "needy" person, under KRS Chapter 31, and therefore, in accordance with KRS 534.040(4), the imposition of the fine was error. KRS 534.040(4) ("Fines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31.").

▬ The issue was not preserved for appellate review; however, Appellant argues that preservation is unnecessary, citing *Travis v. Commonwealth,* 327 S.W.3d 456, 459 (Ky.2010). Because we reverse Appellant's convictions on other grounds, the fine is necessarily vacated. Nevertheless, we draw attention to *Spicer v. Commonwealth,* 442 S.W.3d 26 (Ky. 2014), in which we recently clarified *Travis* with respect to the failure to preserve perceived error in the imposition of court

costs upon person's claiming to be a "poor person." In *Spicer*, we explained:

> If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal [despite lack of preservation].

*Id.* at 35.

 The same analysis is applicable to the imposition of fines upon persons determined to be indigent, or "needy" under KRS 31.120 (listing factors to be considered in determining whether a person is "needy"). Unless the imposition of a fine upon an indigent or "needy" person is apparent on the face of the judgment or is in obvious conflict with facts established in the record (such as plainly having been found indigent at all stages of the trial proceedings), we do not regard it as a sentencing error that is reviewable on appeal in the absence of preservation.

The indigent defendant is obligated to challenge the imposition of a fine that is contrary to KRS 534.040(4), and failure to do so will foreclose appellate review unless the error is apparent on the face of the judgment, or his indigency at the time of sentencing is otherwise plainly established in the record.

## V. CONCLUSION

Based upon our conclusion that the trial court abused its discretion by allowing the Commonwealth to introduce an incriminating statement that had not been disclosed to Appellant pursuant to RCr 7.24(1), we reverse Appellant's convictions and vacate the judgment. Accordingly, we remand the case to the Barren Circuit Court for further proceedings consistent with this opinion.

All sitting. Minton, C.J., Abramson, Barber, Keller, and Noble, JJ., concur. Cunningham, J., concurs in result only.