**Allen CUNNINGHAM, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**2014-SC-000436-MR**

Supreme Court of Kentucky.

RENDERED: OCTOBER 20, 2016

COUNSEL FOR APPELLANT: John Gerhart Landon, Assistant Public Advocate

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Bryan Darwin Morrow, Assistant Attorney General

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant, Allen Cunningham, appeals from a judgment of the Todd Circuit Court convicting him of theft by unlawful taking of property worth more than ten thousand dollars, second degree burglary, third degree burglary, and being a persistent felony offender in the second degree (PFO). As enhanced by the PFO conviction, Appellant was sentenced to imprisonment for a total of 20 years.

Appellant asserts that the trial court committed the following errors during his trial: 1) allowing the prosecutor to impeach him with his pre-trial silence about his alibi; 2) denying his motion for a directed verdict on the theft and burglary charges; 3) allowing prejudicial victim impact evidence during the guilt phase of the trial; and 4) allowing impermissible hearsay testimony of a detective that an anonymous tip led police to Appellant. Because we agree with Appellant that he was improperly impeached about his failure to disclose his alibi and his alibi witness to the police or prosecuting authorities prior to trial, we reverse Appellant's convictions and remand this case for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Police suspected arson when Steve Martin's residence burned during the night and early morning hours of July 4-5, 2011. At the time of the fire, Martin was confined in the county jail. Police detectives investigating the fire discovered that several items, including a motorcycle, television sets, and saddles had been removed from the home and the nearby garage.

Acting on a tip, police discovered the motorcycle in plain view at Appellant's residence, and they seized it. After being informed of the well-known *Miranda* rights, Appellant agreed to talk with police about his possession of the motorcycle. Appellant told them that he, not Martin, owned the motorcycle. He explained that he borrowed $4,000.00 from Martin and temporarily left the motorcycle and its title document in Martin's possession as security for the loan. He said that after he repaid the loan, he picked up the motorcycle, and Martin gave him back the title.[1]

Following the interview, police arrested Appellant and charged him with theft by unlawful taking (over $10,000.00), second degree burglary (relating to Martin's residence), third degree burglary (relating to Martin's garage), second degree arson for burning Martin's home, and tampering with physical evidence. Prior to trial, the Commonwealth dismissed the arson and tampering with physical evidence charges. Appellant was tried on the remaining charges in November of 2012.

At trial, the Commonwealth and Appellant presented divergent explanations of the motorcycle transaction, neither of which exactly matched Appellant's initial statement to police. Martin, testifying for the Commonwealth, said that he had loaned $4,000.00 to Appellant and retained Appellant's motorcycle as collateral for the loan. Then, after Appellant failed to repay the loan, Martin purchased the motorcycle from Appellant by forgiving the $4,000.00 loan and giving Appellant a check for another $4,000.00. Appellant signed the title

---

1. This statement was used for impeachment purposes during trial.

document and gave it to Martin. Martin also testified that Appellant's signature on the title document was never notarized because he did not want to involve a notary in what had become a tense and uncongenial transaction. Martin said that he never gave the title back to Appellant.

To the contrary, Appellant testified that he had been having financial difficulties and that he took the motorcycle to Martin hoping to persuade Martin to buy it. He further explained that, although Martin declined to buy the motorcycle, he was in the process of divorce and asked Appellant if he could use the motorcycle in a ruse to hide cash from his wife. According to Appellant, Martin perpetrated the scheme by giving Appellant a check for $4,000.00 purporting to be a partial payment for purchasing the motorcycle. The memo line on the check noted "2003 Road King Harley." Appellant was to cash the check and bring the money back to Martin. Martin retained possession of the motorcycle and the title document to ensure that Appellant returned with the cash. When Appellant brought the cash back, Martin gave him $400.00 for his efforts and returned the title papers to Appellant. Appellant claimed that he went to Martin's place on July 3, 2011 and with the help of his cousin, retrieved the motorcycle.[2] He testified he was unaware that Martin was in jail at the time.

Appellant also testified that he was in Indiana visiting a friend named Clifford Hutchison on the night of July 4-5, 2011, when Martin's home was burglarized and burned. Hutchison's testimony confirmed Appellant's alibi. The prosecutor challenged this alibi defense by pointing out that Appellant never mentioned before the trial that he was out of town at the time of the burglary and fire. The following exchange between Appellant and the prosecutor transpired:

> Prosecutor: Mr. Cunningham, we were discussing a little earlier, about a witness that was here today, Mr. Hutchison.
>
> Appellant: Yes, ma'am.
>
> Prosecutor: And did you ever tell law enforcement about Mr. Hutchison?
>
> Appellant: No, ma'am.
>
> Prosecutor: So you never told law enforcement that you were with Mr. Hutchinson on July 4, 2011?
>
> Appellant: No, ma'am.

During her closing remarks to the jury, the prosecutor argued:

> The first thing I would like for you to think about is 15 months. Why 15 months? That is how long it took for this defendant to tell law enforcement he had somebody that could clear him of these charges. It's a logical assumption that if somebody is facing serious criminal charges, and they've got proof that can get them out from under those charges, they're going to be shouting that from the roof. But the defendant himself told you that from the date of his arrest … until yesterday, November 20, 2012, he never told law enforcement about Clifford Hutchison. Why wouldn't he do that? The Commonwealth submits because it's not true.

Based upon our decision in *Taylor v. Commonwealth*, 276 S.W.3d 800 (Ky. 2008), the trial court overruled Appellant's objection to the prosecutor's use of pretrial silence respecting his alibi. *Taylor* holds that a defendant's constitutional right to remain silent is not infringed by cross-examination highlighting the discrepancies between a prior statement to police

---

**2.** July 3, 2011 was one day before the fire.

and trial testimony. In *Taylor*, the defendant testified that his earlier confession to police was false and that his exculpatory trial testimony was true. We held that the prosecutor could properly ask the defendant why he did not reveal the true version of his story to anyone prior to trial. *Id.* at 809.

## II. ANALYSIS

### A. Appellant's silence was improperly used against him.

■ Appellant asserts that the prosecutor's effort to impeach his alibi by citing Appellant's prior silence with respect to his location on the night of the burglary violated his rights under the Fifth and Fourteenth Amendments, compelling a new trial.[3] The overarching question presented is whether, and under what circumstances, a criminal suspect, who was given *Miranda* warnings and elected to waive his right to silence by discussing the allegations with police, may be cross-examined about his failure to disclose exculpatory matters to which he later testifies at trial.

We need not undertake the constitutional analysis offered by Appellant because the facts of this case allow its disposition on preferred non-constitutional grounds.[4] Upon review of the record, as in the recently decided case of *Trigg v. Commonwealth*, 460 S.W.3d 322 (Ky. 2015), the issue of whether Appellant's silence may be used as evidence is resolved through the application of KRE 801A(b)(2).

The Commonwealth relies upon *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) to support the argument that Appellant may be impeached

upon his failure to disclose his alibi to police. In *Jenkins*, the defendant (Jenkins) admittedly stabbed and killed the victim. *Id.* at 232, 100 S.Ct. 2124. Instead of immediately contacting the police, he waited two weeks before reporting the crime and turning himself in. *Id.* at 233–234, 100 S.Ct. 2124. At trial, he claimed that he acted in self-defense when he killed the victim. The prosecutor challenged that defense by asking Jenkins about his two weeks of pre-arrest silence, suggesting that if Jenkins had truly acted in self-defense, he would not have waited two weeks before reporting the incident and surrendering to police. *Id.* The Supreme Court found no violation of the Fourteenth Amendment in the application of this traditional common law rule of evidence:

> Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.

*Id.* at 239, 100 S.Ct. 2124.

The Commonwealth justifies the admission of Appellant's silence with respect to his alibi upon application of the same common law principle cited by the Supreme Court in *Jenkins*: a suspect's failure to mention his alibi defense during an interview may be used as impeaching trial evidence if providing the information would

---

3. Appellant also asserts that his right to confidential communication with counsel was threatened. However, as described, the threat cannot be viewed as harm to Appellant. As the Court may not render advisory opinions, this argument is not addressed further.

4. *Stephenson v. Woodward*, 182 S.W.3d 162, 168 (Ky. 2005) ("[C]onstitutional adjudication should be avoided unless it is strictly necessary for a decision in the case.").

have been a natural response called for under the circumstances.

The common law rule relied upon in *Jenkins* is embodied in KRE 801A(b)(2) and is often referred to as an "adoptive admission" or as "silence as admission." The key to the application of the common law principle cited in *Jenkins* is its underlying premise: the silent admission must be *"the failure to state a fact in circumstances in which that fact naturally would have been asserted." Jenkins*, 447 U.S. at 239, 100 S.Ct. 2124. Applying our counterpart to that common law rule, we explained in *Trigg*, "[t]o qualify as an adoptive admission through silence under KRE 801A(b)(2), the defendant's silence must be a response to 'statements [of another person, the declarant] that would normally evoke denial by the party if untrue.' " 460 S.W.3d at 330–333 (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.20[3][b] at 597 (5th ed. 2013), citing *Commonwealth v. Buford*, 197 S.W.3d 66, 73 (Ky. 2006)).

■ While KRE 801A(b)(1) allows a party's own out-of-court statements to be admitted as evidence, KRE 801A(b)(2) allows out-of-court statements of *other* persons to become evidence as an admission of a party *only* if the party against whom it is offered has "manifested an adoption or belief in its truth." As noted in both *Buford* and *Trigg*, silence may qualify as the manifestation of one's adoption of, or a belief in, the other person's statement. When the evidentiary requirements of KRE 801A(b)(2) are satisfied, the party's silence, or "adoptive admission," may be used for both substantive and impeachment purposes. Impeachment under these circumstances is based upon the rationale that "[a] failure to assert a fact, when it

would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact." 3A Wigmore, *Evidence* § 1042 at 1056 (Chadbourn rev. 1970). As the Commonwealth would apply the theory here, Appellant's failure to assert that he was in Indiana on the night of July 4-5, 2011 amounts to an admission that he was *not* in Indiana that night.

We conclude that the factual predicate for reliance upon either *Jenkins* or KRE 801A(b)(2) is missing. From what we discern in the record,[5] no one contends that Appellant remained silent and refused to answer the detective's questions during the interview, so in that sense Appellant was not "silent." It appears that Appellant was questioned about his possession of the motorcycle that he claimed to have taken from Martin's property on July 3. Although police had informed Appellant that they were looking for stolen property, nothing in the record indicates that during their interview with Appellant, police made any accusatory or incriminating references to the night of July 4-5, 2011 that would have "naturally" motivated Appellant to assert his whereabouts on that night. *Jenkins*, 447 U.S. at 239, 100 S.Ct. 2124.

■ We said in *Trigg*:

Of critical importance in applying the rule is this: *it is not the silence itself that constitutes the "statement" to be admitted into evidence.* The "statement" that the rule admits into evidence is the audible expression of *another* person, "the declarant," whose statement the defendant heard and to which the defendant's silence "manifested an adoption or belief in its truth."

460 S.W.3d at 331. Consequently, "[w]hen a prior inconsistent statement is offered to

---

5. Although the interview was tape-recorded by the detective, the recording of the interview does not appear to be part of the record

and the relevant testimony about it provided very few details of the conversation.

impeach a witness and the claimed inconsistency rests on an omission to state previously a fact now asserted, the prior statement is admissible if it also can be shown that prior circumstances were such that the witness could have been expected to state the omitted fact . . . because he or she was asked specifically about it . . . ." *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550, 556–557 (1996) (citations omitted). Without evidence establishing the context in which the defendant responded with silence, no meaning can be fairly ascribed to the silence, and accordingly, the silence cannot be viewed as inconsistent with his trial testimony. *Trigg*, 460 S.W.3d at 331–332.

■ It is fundamentally unfair to impeach a witness, including a defendant or other party, for his previous failure to state a fact which, under the circumstances, one would not be naturally inclined to assert. Appellant's failure to tell police about his location on the night of the crime is absolutely irrelevant where there is no indication that police said anything to him that suggested he was elsewhere on that night. Unless the detective had informed Appellant about the fire and burglary on July 4-5, Appellant's failure to mention his whereabouts that night has no meaning.[6] Without some testimony that Appellant was called upon to speak as to his whereabouts on the night of July 4-5, 2011, his silence on the subject was not proper impeachment simply because it cannot be regarded as inconsistent with his trial testimony.

■ We reverse a conviction for the improper inclusion of evidence only when it affects an appellant's substantial rights. RCr 9.24; *Daugherty v. Commonwealth*,

467 S.W.3d 222, 236 (Ky. 2015). Appellant's credibility was a central question for the jury as it considered the conflicting testimony concerning his possession of allegedly stolen property. The challenge to Appellant's credibility posed by the argument that an innocent person would have explained his alibi to police even when he had not been accused may have played a significant part in the jury's ultimate determination that Appellant was guilty. When the evidence against the defendant is not clearly conclusive, and the Commonwealth's case rests upon the credibility of its witnesses and the defendant's lack of credibility, inappropriate comment on the defendant's silence is not harmless.

We find the error in this case requires reversal because we "cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Appellant is entitled to a new trial. We proceed to address the remaining issues raised in this appeal that are likely to recur upon retrial.

**B. Appellant was not entitled to a directed verdict on the charges of theft by unlawful taking and burglary.**

■ Appellant asserts that he was the legal owner of the motorcycle, and therefore, he could not be found guilty of stealing his own property. KRS 514.030(1)(a) provides that to be guilty of theft, one must unlawfully take or exercise control over movable property *of another.* (Emphasis added.) Consequently, Appellant argues that the trial court erred by not

---

**6.** Moreover, it would reasonably be regarded as probative of guilt if, while explaining his claim to the motorcycle, Appellant had *sua sponte* attempted to explain where he was on

the night of the fire, when police had not even questioned him about his location on that night or otherwise implied his guilt.

granting his motions for directed verdicts on theft for taking the motorcycle.

For the same reason, Appellant contends that he was entitled to a directed verdict on the burglary charge. Burglary requires proof that the accused entered the subject building with the intent to commit a crime. KRS 511.020, KRS 511.030, KRS 511.040. In Appellant's case, the underlying crime was theft of the motorcycle. If he could not as a matter of law be guilty of theft, he could not, per force, be guilty of burglary.

■ To support his argument, Appellant contends that the motorcycle could not be "property of another" because the title to the motorcycle was never transferred to Martin in accordance with KRS 186A.215.[7] Upon appellate review of a trial court's denial of a directed verdict motion, we must determine if, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citation omitted).

■ Ownership is the legal right to use and enjoy property and to exercise exclusive dominion and control over a particular piece of property. *See Ohio Valley Fire & Marine Insurance Company's Receiver v. Skaggs*, 216 Ky. 535, 287 S.W. 969, 970 (1926). Appellant's reliance upon KRS 186A.215 to support his claim that he, rather than Martin, legally owned the motorcycle is tempered by the definition of "owner" provided in KRS 186.010. For purposes of KRS Chapter 186A, Kentucky's motor vehicle registration law, the "owner" of a motor vehicle is "a person who holds the legal title of a vehicle or *a*

person who pursuant to a bona fide sale has received physical possession of the vehicle . . . ." KRS 186.010(7)(a) (emphasis added). Accordingly, under KRS Chapter 186A, a certificate of title is an *indicator* of ownership of a vehicle, but it is not exclusive and may be rebutted by other evidence. Thus, while the legal title had not been fully transferred to Martin, the Commonwealth presented substantial evidence that Martin, having physical possession of the motorcycle after paying for it "pursuant to a bona fide sale," was its "owner" under KRS Chapter 186A.

The conflicting evidence raised a factual question regarding the motorcycle's ownership which the trial court in this case properly and wisely submitted to the jury with an appropriate instruction.[8] We find no error in the trial court's refusal to grant Appellant's motions for directed verdicts on the theft and burglary charges related to his taking of the motorcycle.

## C. Martin's testimony that he lost all his possessions in the fire and that he did not have insurance coverage should not have been admitted.

■ Over Appellant's timely objection, the trial court permitted the Commonwealth to introduce evidence that Martin, as the victim of Appellant's alleged theft, had no insurance to cover the loss of his burned home and the personal property inside it. The following exchange occurred at trial:

> Prosecutor: Mr. Martin, did you lose everything in that fire?
>
> Judge: Say yes or no.
>
> Prosecutor: Was that a yes or no?

7. KRS 186A.215 details the procedures required for transferring ownership of a motor vehicle.

8. The trial court provided the jury with a separate instruction on the law relevant to the

ownership of the motorcycle to guide its determination of this issue of fact. No issue has been raised with respect to the propriety of that instruction.

Martin: Yes, ma'am. Yes.

Prosecutor: Did you have any insurance coverage?

Martin: No.

Prosecutor: Did you, in, in addition to the financial value, did you lose a lot of things of personal value?

Martin [crying]: Yes, ma'am.

■ Appellant objected on the grounds that the testimony was irrelevant and served only the prejudicial purpose of arousing sympathy for the victim. The trial court reasoned that the testimony was relevant to dispel any implication that Martin had burned his own property to collect insurance proceeds. We review a trial court's evidentiary rulings for an abuse of discretion. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001) (citations omitted).

■ Relevant evidence is "evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." KRE 401 (emphasis added). Relevant evidence, otherwise admissible, may nevertheless be excluded when, in the exercise of the trial court's discretion, "its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. However, a trial court has absolutely no discretion to admit irrelevant evidence. "Evidence which is not relevant is not admissible." KRE 402.

Appellant was on trial for theft by unlawful taking and burglary. Martin's despair over the uninsured property he lost in the fire was of no consequence in determining whether Appellant had unlawfully entered the premises and stolen some of Martin's belongings. Appellant never suggested that Martin set fire to his own home or had someone else do so. The Commonwealth justifies the introduction of this testimony by claiming that it was necessary to refute the insinuation arising from other evidence that Martin was an unsavory character who might have set fire to his own house to obtain insurance proceeds. That evidence included Appellant's claim that Martin engaged in a scheme to defraud his marital estate and the undisputed fact that Martin was incarcerated when his home burned.

We fail to see the relevance of the testimony under review. Martin's lament that all he had was lost in the fire did not tend to refute Appellant's version of the motorcycle transaction, nor did it tend to buttress the Commonwealth's version. Evidence that Martin's fire loss was uninsured was irrelevant and its admission at trial was error. With this case being remanded on other grounds for a new trial, we need not perform the RCr 9.24 harmless error analysis. On retrial, if the issue arises again in substantially the same evidentiary context, Martin's testimony about his uninsured loss of possessions in the fire should not be admitted.

**D. The alleged error of admitting testimony that an anonymous tip led the police to Appellant was not preserved.**

On direct examination by the prosecutor, a police detective testified that he was directed to investigate Appellant after receiving "a call from one of my lieutenants at Post One about some information, uh, of some information, uh, of some of the stolen property [from the Martin burglary] ...." Appellant asserts that this testimony was impermissible hearsay and its admission into evidence denied him the right to cross examine a witness against him. As this

issue was not preserved, Appellant seeks palpable error review under RCr 10.26. Given this case is being remanded on other grounds, palpable error review is unnecessary. This is an issue for the trial court to address if it should arise at retrial.

### III. CONCLUSION

For the reasons set forth above, the judgment of the Todd Circuit Court convicting Appellant of theft by unlawful taking of property worth over ten thousand dollars, second degree burglary, third degree burglary, and being a persistent felony offender in the second degree is reversed. Accordingly, the case is remanded to the trial court for further proceedings consistent with this opinion.

All sitting. Minton, C.J.; Hughes, Keller, Noble, and Wright, JJ., concur. Cunningham, J., dissents by separate opinion.

### CUNNINGHAM, J., DISSENTING:

I respectfully dissent.

Nothing is more troublesome to a prosecution's case and the ends of justice than a surprising, untruthful alibi witness. Especially in combination with the defendant's own testimony. Recognizing this, a majority of states require notice from the defense to the Commonwealth of the identities of any such witnesses. An alibi witness notice provision has even been adopted in the Federal Rules of Criminal Procedure through Rule 12.01.

Kentucky is in the minority in not having a witness notice requirement. Our prosecutors usually have the alibi witness sprung upon him or her cold at trial. No time to have checked the reputation of the witness. No time to find that the witness professed to investigators they knew nothing about the crime. No time to prepare for any useful cross-examination. So, the flat-footed prosecutor must revert to his quick wit and own trial savvy instincts for his cross-examination. One of the few effective tools of a prosecutor in cross-examining an alibi witness, be it the defendant or another person, is common sense. If a mother knows that her son was home with her the night of the alleged crime, she is not going to wait till the trial date to say so. She will be at the courthouse demanding to be heard by the sheriff, prosecutor, the judge, or anybody. It is, if valid, the first claim asserted by a person falsely accused.

While this case centers primarily upon the alibi testimony of the Appellant, it spins off of KRE 801A(b)(2) which pertains to all witnesses in a criminal trial. By deciding this case today under that rule, the majority effectively strips from the prosecutor one of its key weapons in coping with surprise.

Of course, the criminal defendant has 5th Amendment rights to remain silent when being interrogated and therefore cannot be questioned about failure to assert an alibi. However, in this case the Appellant was Mirandized when first questioned by the police. He knowingly waived his right not to make a statement. In doing so, he also waived all attending privileges which have been determined by judicial decisions, including either his silence in response to certain questions or failure to assert certain obvious defenses.

The majority correctly acknowledges this fact by moving quickly past the constitutional question. However, I respectfully submit that the majority totally mischaracterizes the issue as one involving the evidentiary rule of "adoptive admission" under KRE 801A(b)(2). This has nothing to do with inconsistent statements. It has nothing to do with statements at all except as a means to an end. It has to do with what action the Appellant took, or didn't

take, once he learned of the date of the crime.

*This is not a case about an inconsistent statement. It is a case about inconsistent conduct.*

First of all, after reviewing the trial record, I must take issue with the standard of review. The Appellant did not lodge his objection to evidence being introduced as to the interview of August 11, 2011, at which time the Appellant may not have known the date of the alleged wrong. Appellant's counsel objected to the evidence of the failure of the Appellant to report his alibi over the months between that date and trial. In stating this objection, counsel states that once Appellant had counsel appointed, it was the responsibility, even duty, of the defense lawyer to speak for the Appellant. Therefore, his client is being held responsible for the acts or inaction of his lawyer—breach of the right of confidentiality between counsel and client. There does not seem to be a narrowing of the complaint to the interview of August 11, 2011, and questioning by the detective. Therefore, I would submit the standard is a palpable error standard, not a harmless error examination.

It's important that we place the issue in full context within the trial itself. First of all, the Appellant comes forth with the alibi defense. He, himself, raised the issue with the witness Clifford Hutchison. Mr. Hutchison was a prosecutor's worst nightmare. He appeared as a decent, honest witness who stated that the Appellant was with him in Indiana, one hour and twenty minutes away, until after midnight of the date of the crime. He had good reference point because of the date being July 4th with fireworks and celebration.

The testimony of Mr. Hutchison took place at trial on November 20, 2012, sixteen months after the date of the crime—July 4, 2011. This is apparently the first time the Commonwealth had heard of the alibi.

The exchange between the Appellant and cross-examination by the prosecutor which draws the ire of the majority bears repeating here.

Significantly, it spins off the testimony of Clifford Hutchison, the alibi witness.

**Prosecutor:** Mr. Cunningham, we were discussing a little earlier, about a witness that was here today, Mr. Hutchison.

**Appellant:** Yes, ma'am.

**Prosecutor:** And did you **ever** tell law enforcement about Mr. Hutchison? (emphasis added)

**Appellant:** No, ma'am.

**Prosecutor:** So you never told law enforcement that you were with Mr. Hutchinson [sic] on July 4, 2011.

**Appellant:** No, ma'am.

It was a tactical attempt to try to minimize or discredit the unannounced alibi testimony of Hutchison. This exchange did not necessarily pertain to the statement taken from Appellant on August 11, at which time he did not know the date he was being charged with committing the crimes. So, it had nothing to do with silence at that interview or adoption by silence or anything pertaining to KRE 801A(b)(2). The prosecution was simply attacking the credibility by exposing the Appellant's inaction. This cross-examination tactic is a close relative of the "delayed reporting" in rape cases by the victim.

It is brought together in the Commonwealth's closing argument reported in the majority opinion. "The first thing I would like for you to think about is 15 months. Why 15 months? That is how long it took for this defendant to tell law enforcement he had somebody that could clear him of these charges." (Incidentally, the majority emphasizes this argument as major error, but counsel for Appellant neither objected

to it at the time, nor requested an admonition.)

It is a fair argument. It was a needed question to raise in light of the testimony of the independent alibi witness, Mr. Hutchison. I emphasize that it was the lack of action, not the silence at the interview, that was at the heart of this whole approach by the Commonwealth.

If this case had been prosecuted in Indiana or Ohio or a majority of other states, there would have been no witness Hutchison in this case. There would have been no alibi witness allowed in this case. Or at least they would not have been a surprise to the prosecutor. The Commonwealth Attorney would not have to confront this issue flat-footed on the day of trial because the Appellant would have been required to give notice.

Surely, there is no error in this case. There is certainly not sufficient error to affect the "substantial rights" of the Appellant. More importantly, as 'to what I would submit is the proper standard, there is no palpable error of a manifest injustice.

Therefore, I respectfully dissent.