RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000165-DG

DANIEL LEE MOSS                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.               CASE NO. 2014-CA-001523-MR
SIMPSON CIRCUIT COURT NO. 13-CR-00049


COMMONWEALTH OF KENTUCKY        APPELLEE


**OPINION OF THE COURT BY JUSTICE VENTERS**

**<u>AFFIRMING</u>**

Appellant, Daniel Lee Moss, appeals from a decision of the Court of

Appeals which affirmed the judgment of the Simpson Circuit Court convicting

him of manslaughter in the second degree and tampering with physical

evidence.[1] We granted discretionary review to address Appellant's claims that

the trial court erred by: 1) allowing the prosecutor to use his silence as an

adoptive admission of guilt, and to expressly portray it as such in the

Commonwealth's opening statement and closing argument; and 2) allowing his

pre-arrest silence to be used as substantive evidence of his guilt and to rebut

---

[1] The Court of Appeals upheld both of Appellant's convictions, but vacated the
sentence imposed for tampering with evidence and remanded for retrial of the penalty
phase pertaining to that charge.

his anticipated testimony. For the reasons stated below, we affirm the Court of Appeals' decision, but we do so on different grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shawn Thompson was shot and killed while he and Sarah Sanders were visiting the Simpson County residence of Appellant and Christina Layle. Appellant informed the 911 operator that he had been attacked in his home and had to shoot his assailant (Thompson). Officers from the Simpson County Sheriff's office responded quickly. Deputy Jones arrived first to find Thompson lying face up on the porch with his head at the bottom of the front steps. Sanders was kneeling over Thompson, hugging him and screaming.

Deputy Johnson arrived next on the scene. In order to calm what was described as a chaotic scene, the officers took Appellant, Layle, and Sanders into the residence and seated them in the living room. As they did so, Deputy Jones conversed with them. Appellant was explaining to Jones what had happened when Sanders screamed, "You shot him in the back for no reason." Appellant made no reply; he remained seated with his hands partially covering his face and mouth. Deputy Johnson took Sanders to a patrol car to separate her from the others at the scene.

Detective Lawson then arrived on the scene and began questioning Appellant about the shooting. Appellant later went voluntarily with officers to the sheriff's office where he made a more formal statement.

2

Appellant was indicted for the murder of Shawn Thompson and for tampering with physical evidence.[2] At trial, the jury found him guilty of tampering with evidence, but acquitted him of murder and instead convicted him of the lesser charge of second-degree manslaughter based upon an imperfect self-defense theory: Appellant had an actual but mistaken and wantonly-formed belief that he had to shoot Thompson in order to protect himself (or others) from harm threatened by Thompson. Appellant's sentence was fixed at the maximum term of imprisonment for each crime: 10 years for second-degree manslaughter and five years for tampering with evidence, to be served consecutively.

The Court of Appeals agreed with the Commonwealth that Sanders' accusatory statement along with Appellant's failure to deny it, qualified for introduction into evidence under KRE 801A(b)(2) as an adoptive admission, or as it is sometimes called, an admission by silence. Correspondingly, the Court of Appeals rejected Appellant's argument that he was improperly prejudiced by the Commonwealth's repeated characterization of Sanders' statement as an adoptive admission. The Court of Appeals also rejected Appellant's claim that a manifest injustice resulted from the Commonwealth's reference to Appellant's pre-arrest silence.

---

[2] The tampering with evidence charge stemmed from the allegation that after the shooting, Appellant repositioned a sword to make it appear that Thompson was armed with the sword at the time of the shooting.

## II. ANALYSIS

### A. Appellant's silence in the face of Sanders' accusation was not an adoptive admission under KRE 801A(b)(2).

Appellant argues that the trial court and the Court of Appeals erred in their respective applications of KRE 801A(b)(2) leading those tribunals to the erroneous conclusion that Sanders' accusation that Appellant "shot [Thompson] in the back for no reason," coupled with Appellant's failure to respond, were admissible as Appellant's admission that Sanders' statement was true. Appellant preserved the issue for appellate review with an appropriate objection during the trial. Upon review, we agree with Appellant that the fundamental requirements for the application of KRE 801A(b)(2) were not present here. But, we further conclude that the error was harmless.

At trial, Deputy Jones, Deputy Johnson, Sanders, and Appellant all testified to the circumstances surrounding Sanders' accusation. Deputy Johnson testified first. He testified that after he arrived on the scene, Appellant, Layle, and Sanders were taken into the residence. Johnson said he listened as Deputy Jones talked to them. Sanders, seated in close proximity to Appellant, loudly exclaimed, "You shot him in the back for no reason." Johnson testified that Appellant's hands partially covered his face and mouth and he said nothing.

Deputy Jones testified that the scene was chaotic when he arrived, with Sanders screaming and yelling. To get control of the situation and determine what happened, Sanders, Layle, and Appellant were taken inside and seated in the living room. Jones testified that Sanders shouted out, "You shot him in the

4

back for no reason," but he could not say to whom she directed her accusation. Jones confirmed that Appellant sat there holding his head in his hands and did not reply.

Sanders testified that when the officers took her and the other witnesses into the house, Appellant began explaining his version of the events. Sanders said she got "so worked up from everything, [and] immediately started telling what had happened." She did not specifically testify about her accusation; nor did she mention Appellant's failure to respond.

Appellant testified that when he was taken into the residence, he tried to explain to the deputy what happened, but that Sanders was screaming accusations and interrupting him. He acknowledged that his initial description of the incident to police may have been incomplete because he was in shock and the chaotic situation caused by Sanders' screaming was not conducive to that type of communication. He stated his statements were getting confused with what others, including Sanders, were saying.

KRE 801A(b) governs the hearsay rule exception pertaining to admissions of parties. Even though Sanders' accusation might otherwise be inadmissible hearsay, KRE 801A(b)(2) would permit its introduction into evidence *if*, under the circumstances, Appellant's conduct including his failure to reply "manifested [his] adoption or belief in its truth."[3] KRE 801A(b)(2) is the modern expression of a well-established common law rule of evidence:

---

[3] KRE 801A(b) states in pertinent part: "Admissions of parties. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness,

5

When accusatory or incriminating statements are made in the presence and hearing and with the understanding of the accused person and concerning a matter within his knowledge, under such circumstances as would seem to call for his denial and none is made, those statements, and the fact that they were not contradicted, denied, or objected to, become competent evidence against the defendant.

*Griffith v. Commonwealth,* 63 S.W.2d 594, 596 (Ky. 1933).[4]

Like many common law rules of evidence that have been included in modern codes of evidence, KRE 801A(b)(2) derives its wisdom from an elementary rule of human nature that was long ago woven into the fabric of the common law. *Griffith* explains the rational basis for the rule:

Admissibility of [an out-of-court accusatory statement] as not being tainted by the hearsay stigma is based upon the crystalization [sic] of the experience of men that it is contrary to their nature and habits to permit statements to be made in their hearing and presence tending to connect them with an offense for which they may be made to suffer punishment without entering an objection or denial unless they are in some manner repressed or restrained or there is seemingly no natural and proper call for such contradictions. The occurrence is a fact for the jury to interpret as throwing light upon the question of guilt or innocence. Its probative force may be great or little according to the particular circumstances and the general mental and moral fiber of the person charged. Such is the rationale and the rule in this state.

63 S.W.2d at 596.

---

if the statement is offered against a party and is . . . (2) A statement of which the party has manifested an adoption or belief in its truth."

[4] Overruled on other grounds in *Colbert v. Commonwealth,* 306 S.W.2d 825, 828 (Ky. 1957).

Recently, in *Cunningham v. Commonwealth*, we reiterated that "[t]o qualify as an adoptive admission through silence under KRE 801A(b)(2), the defendant's silence must be a response to 'statements [of another person, the declarant] that would normally evoke denial by the party if untrue.'" 501 S.W.3d 414, 419 (Ky. 2016) (citing *Trigg v. Commonwealth*, 460 S.W.3d 322, 331 (Ky. 2015), quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.20[3][b] at 597 (5th ed. 2013)). A trial court has broad discretion in determining the facts regarding the admission of evidence under KRE 801A(b)(2) and we review its determination in that regard for abuse of discretion. *Dant v. Commonwealth*, 258 S.W.3d 12, 18 (Ky. 2008) (citation omitted). Nevertheless, when reviewing an application of KRE 801A(b)(2), we remain mindful of Professor Lawson's warning that "[s]ilence with respect to a statement will always have some ambiguity, which creates a need for cautious use of the concept and thoughtful consideration of the circumstances surrounding that silence." *Trigg*, 460 S.W.3d at 332 (quoting Lawson, *The Kentucky Evidence Law Handbook* § 8.20[3][b] at 597).

Against this background of basic principles, we review the circumstances surrounding Sanders' accusation and Appellant's corresponding conduct to see if one could reasonably infer that Appellant "manifested an adoption or belief in [the] truth" of Sanders' exclamation so as to constitute his adoption of her statement, thereby allowing its admission into evidence. *Ragland v. Commonwealth*, 476 S.W.3d 236, 251 (Ky. 2015) ("Determination [of an adoptive admission under KRE 801A(b)(2)] should be made with consideration

of the contemporaneous circumstances surrounding the making of the statement and the silent response to it.").

Of immediate significance in our review of the relevant circumstances is the fact that Appellant had been conversing with Deputy Jones about the shooting when Sanders interrupted. Appellant, therefore, was *not* silent. According to Sanders, her accusation was itself a reaction to what she perceived as Appellant's exculpatory statement to Deputy Jones. Deputy Johnson, Sanders, and Appellant all confirm that Appellant was talking to Deputy Jones about the incident *before* Sanders uttered her accusation.

As derived from the rational basis for the rule noted above, a suspect's failure to deny an incriminating accusation is not an admission of guilt under circumstance in which "there is seemingly no natural and proper call" to contradict the accusation. *Griffith*, 63 S.W.2d at 596. Appellant would have had no "natural and proper call" to contradict Sanders' outburst when he was then and there in the process of telling his side of the story to the police, especially after his explanation had provoked Sanders' accusation. Engaging Sanders in a debate about the shooting would not be a reasonable option under such circumstances and would not have been helpful to police trying to quiet a chaotic situation. Given those circumstances, it cannot reasonably or fairly be said that Appellant was naturally called to contradict Sanders' accusation, and it appears that the trial court did not take this factor into account. Appellant's failure to verbally protest Sanders' accusation did not "manifest an adoption or belief in its truth." KRE 801A(b)(2). We are satisfied

8

that admitting Sanders' accusation under such circumstances was an abuse of discretion, and therefore the corresponding inference that Appellant had tacitly adopted her accusation as his own truthful statement was improperly allowed.

Appellant argues that the jury's decision to fix his sentence at the maximum penalty for both offenses proves that the error in admitting his silence as his affirmation of Sanders' accusation cannot be dismissed as harmless. We disagree. Appellant was charged with murder; he did not deny shooting Thompson, but he claimed that he did so in self-defense. To prove the murder charge, including the element that Appellant was not acting in self-defense, the Commonwealth urged the jury to construe Appellant's silent response to Sanders' accusation as an admission of guilt that he had, in fact, shot Thompson "in the back for no reason."

As established by the verdict convicting Appellant of second-degree manslaughter, the jury necessarily rejected the inference that Appellant admitted by his silence that he shot Thompson for no reason.[5] The jury was evidently persuaded that Appellant's reason for shooting Thompson was his actual, but mistaken, belief that he needed to use deadly force to protect himself from Thompson. That verdict indicates that the jury recognized, as we explained above, that Appellant's silence under these circumstances did not signify his agreement with the accusation. The verdict dispels our concern that

---

[5] As constructed in this case, the jury instructions did not provide for a theory of second-degree manslaughter other than one based upon imperfect self-defense in wantonly forming the belief that he had to act with deadly force to protect himself or others.

the jury was influenced by the error and allows us to "say with fair assurance that the judgment was not substantially swayed by the [evidentiary] error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (citation omitted). The erroneous application of the adoptive admission exception to the hearsay rule was harmless in this instance. RCr 9.24.[6]

## B. The prosecutor improperly explained to the jury the adoptive admission rule.

Appellant further complains on appeal that the prosecutor improperly expounded upon the legal theory of adoptive admissions in the opening statement and in his closing argument. The alleged error in the opening statement was preserved by an appropriate objection, which the trial court sustained. The alleged error in the closing argument was not preserved, and Appellant requests palpable error review.

In the opening statement, the prosecutor told the jury:

> [W]e're going to talk about a thing called adoptive admissions, that's a legal term for . . . *when someone says something incriminating about you that normally calls for you to respond, you need to respond negatively and deny it, and if you don't, you're adopting it, you're agreeing to it.*

During closing arguments, the prosecutor again explained to the jury: "We call it an adoptive admission. Under the law, *if somebody says something that you've got to respond to, and you don't, you're taking it as*

---

[6] RCr 9.24 states in pertinent part: "No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice."

10

*your own statement.*" After providing examples of circumstances in which an accusatory statement would demand a response, the prosecutor repeated: "*If someone walks up to you and says . . . 'You're a murderer, you shot someone in the back for no reason,' you have to respond, or else you're adopting it as their telling you the truth.*"

We agree that the prosecutor overreached by attempting to explain the law to the jury. To the extent that the jury needs to understand the law, the presentation of the law to the jury is exclusively within the province of the court. *See* RCr 9.54(1); *Broyles v. Commonwealth*, 267 S.W.2d 73, 76 (Ky. 1954) ("The only law which the jury should be interested in is that contained in the court's instructions."). In closing argument, trial counsel may emphasize legal principles found in the jury instruction but may not assume the role of teaching the law or applicable legal principles to the jury. *Broyles*, 267 S.W.2d at 76 ("The argument of an attorney should be confined to a discussion of the facts of the case and to the instructions as they apply to those facts." "A dissertation on abstract rules of law has no place in an argument to a jury from a procedural standpoint.").

The Commonwealth insists that even if the comments called into question were improper, prejudicial error did not occur because the prosecutor did not misstate the law. We do not agree that the prosecutor accurately explained the law, and we take this opportunity to identify the common misperception about adoptive admissions reflected in the prosecutor's comments.

11

The prosecutor's comments to the jury that "You need to respond . . . and deny [the incriminating accusation], and if you don't, you're adopting it, you're agreeing to it" and "You have to respond, or else you're adopting it as their telling you the truth" suggests that one has a legal duty to respond to an accusation. That is incorrect. There is no legal duty to respond to an accusation, and the law does not ordain that one who fails to deny an accusation has legally admitted it.

Neither the common law rule of adoptive admissions nor KRE 801A(b)(2) creates the duty suggested by the prosecutor. In further contradiction of the prosecutor's argument, there is no presumption that in failing to deny an accusation, "you're adopting it, you're agreeing to it." The law of adoptive admissions is nothing more than an exception to the hearsay rule that allows in applicable circumstances an otherwise inadmissible out-of-court assertion (i.e., the accusation) to be admitted as evidence for whatever probative value it may have against a party whose conduct has "manifested an adoption or belief in [the] truth" of the out-of-court statement. KRS 801A(b)(2). As we emphasized in *Trigg*, *"it is not the silence itself that constitutes the 'statement' to be admitted into evidence.* The 'statement' that the rule admits into evidence is the audible expression of *another* person [which] the defendant heard and to which the defendant's silence 'manifested an adoption or belief in its truth.'" 460 S.W.3d at 331.

As noted in *Griffith* and other cases, the common law of evidence embracing the collective societal knowledge of human nature teaches that, in

12

certain circumstances after hearing a statement, a person's conduct (including his silence) can look and sound very much like a manifestation of his belief that the statement is true. At most, the law allows the fact finder to hear the out-of-court accusation and then draw from the listener's conduct any reasonable inference their wisdom and common-sense permits, including the inference that the listener agrees with the accusation. Upon a proper application of KRE 801A(b)(2), trial counsel may encourage a jury to interpret a party's silence as an admission; but telling the jury as a matter of law that the party's silence is an admission is inaccurate and impermissible.

The trial court correctly sustained Appellant's objection during the opening statement, and no other relief was requested. The similar remark made during the prosecutor's closing argument was equally improper, but that error was not preserved. Upon reviewing it, we find that no manifest injustice resulted from the error for the same reason we found the erroneous admission of Sanders' statement to be harmless. The jurors clearly found that Appellant's silence was not his admission that he shot Thompson "for no reason." The jury accepted Appellant's testimony that he believed his use of force was necessary in self-defense, but further concluded that Appellant was wantonly mistaken in that belief. RCr 10.26 bars appellate relief for unpreserved errors which do not result in manifest injustice.

## C. Comparing the inconsistencies of Appellant's pre-trial statements was not an improper comment upon his pre-arrest silence.

In his testimony during the Commonwealth's case-in-chief, Detective Lawson described the account of the incident Appellant provided at the scene

13

of the crime. Lawson testified that, although Appellant had the opportunity at the scene to explain in detail "everything that happened," he only provided "a partial story," leaving out many details. Lawson testified that the statement Appellant gave later at the sheriff's office included details omitted from their earlier discussion.

Appellant claims that this line of direct examination was improper: (1) because it constituted comment upon Appellant's pre-arrest exercise of his right to remain silent; and (2) because this testimony during the Commonwealth's case-in-chief was admissible only as rebuttal testimony. Since neither of these alleged errors was preserved for appellate review, Appellant seeks palpable error review under RCr 10.26.

We agree, having so held in *Baumia v. Commonwealth*, 402 S.W.3d 530, 536 (Ky. 2013), that a suspect retains his Fifth Amendment right to remain silent during the pre-arrest phase of a case and that an invocation of that right by remaining silent cannot be used against him. Contrary to Appellant's argument, his silence before arrest was not used against him. Appellant's pre-trial voluntary statements to police were admissible, and Lawson's testimony describing the differences in Appellant's statements was not a reference to Appellant's invocation or exercise of his right to remain silent.

In *Anderson v. Charles*, 447 U.S. 404, 408-409 (1980), the United States Supreme Court held that a police officer's testimony about the inconsistencies between a defendant's trial testimony and his pre-trial statement was not "designed to draw meaning from silence, but to elicit an explanation for a prior

14

inconsistent statement," and that the omission of facts, when comparing two inconsistent statements, will not be viewed as silence under *Doyle v. Ohio*, 426 U.S. 610 (1976). *Anderson*'s rationale applies equally well to a comparison of two pre-trial statements made by the accused at different times. Detective Lawson's testimony on this point was not improper.

We also reject the claim that Lawson's testimony was calculated to impeach Appellant before he testified and that he was unfairly compelled to defend his credibility by testifying when he might otherwise have preferred not to. Identifying the inconsistencies in Appellant's pre-trial statements was not a comment upon his right to remain silent. Moreover, pointing out such inconsistencies is not limited to impeachment purposes. Inconsistent statements are properly introduced as substantive evidence. *Jett v. Commonwealth*, 436 S.W.2d 788, 792 (Ky. 1969); KRE 801A(b)(1). Under *Jett*, the inconsistencies in Appellant's pre-trial statements were properly taken into evidence as substantive proof. It was reasonable to infer that the differences in Appellant's voluntary pre-trial statements indicated an effort to exculpate himself, which as substantive evidence could be construed as probative of guilt, notwithstanding its effect upon his perceived credibility. *See Fisher v. Duckworth*, 738 S.W.2d 810, 814 (Ky. 1987). We find no error in admitting Detective Lawson's testimony and no basis upon which to grant palpable error relief.

## III. CONCLUSION

For the reasons set forth above, we affirm the Court of Appeals' decision, although we do so on different grounds.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jason Bradley Moore
Assistant Attorney General