RENDERED: NOVEMBER 1, 2018
TO BE PUBLISHED

Supreme Court of Kentucky **FINAL**

2017-SC-000569-MR   DATE 11/26/18 Kim Redmon, DC

WILLIAM E. MASON                                    APPELLANT

                    ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                     HONORABLE MARY M. SHAW, JUDGE
                            NO. 16-CR-001814

COMMONWEALTH OF KENTUCKY                            APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

## AFFIRMING

A circuit court jury convicted William E. Mason of two counts of murder, possession of a handgun by a convicted felon, tampering with physical evidence, and being a first-degree persistent felony offender. The jury recommended, and the trial court accepted, a total effective sentence of life imprisonment. Mason now appeals the resulting judgment as a matter of right,[1] raising several challenges to the admission of certain evidence at trial. Finding no reversible error on the part of the trial court, we affirm the judgment.

---

[1] Ky. Const. § 110(2)(b).

## I. BACKGROUND.

Investigators found the lifeless bodies of three men, Larry Thomas, John Bailey, and Michael Bass, at the residence of Everett Todd. The bodies of Thomas and Bailey were found in Todd's living room, and Bass's body was found in the bedroom. All three men had been shot in the head, and their bodies had been rolled in pieces of carpet cut from the floor. Todd first informed law enforcement thirteen hours after the men had died. Todd told the police that he knew nothing about the killings because he had spent the night at a friend's house, discovering the bodies upon returning home in the morning. Authorities questioned three individuals, Todd, Christopher Giddens, and Mason, as part of the investigation of these apparent crimes.

During questioning, Todd retracted his earlier denial and revealed that, in fact, he knew about the murders occurring in his home. Todd stated that Mason murdered the three men and Giddens helped, reluctantly, by cutting the carpet to wrap the bodies. Specifically, Todd stated that he arrived home at about 3 a.m. the day of the murders to pick up some clothes for an overnight stay with his girlfriend when he encountered Mason relaxing in the kitchen and living room with Bailey and Thomas. A moment later, Giddens came through the back door, and, at almost that very instant, Todd heard "a shot discharge" and saw Mason shooting Bailey in the head. Mason then killed Thomas and asked where Bass was. Mason then went into the bedroom, after which Todd heard a gunshot and the sound of Bass falling to the floor. Todd spent a few moments inside the house, mopping up some blood and cutting a strip of

2

carpet. Todd, Giddens, and Mason then went to Giddens's mother's house to discuss what to do next. Todd eventually left for his girlfriend's house, where he spent a few hours sitting in his car. He then returned to his own home, looked briefly inside, and left again to go to his cousin's house. He slept there for a few hours before calling police.

Giddens also stated that Mason killed the three men and admitted to assisting in the manipulation of the crime scene after the shootings. Specifically, Giddens stated that he arrived at Todd's house to find Mason, Bailey, and Thomas conversing. Moments after arriving at the house, Mason shot Bailey and Thomas. Giddens, Todd, and Mason then left the house and went to Giddens's mother's home, where they sat for a few minutes on the front porch before deciding to return to Todd's house to "fix" the scene. Giddens stated that it was during this return trip that he first saw Bass's body, finding it on the floor of a nearby bedroom. Giddens took a box cutter and cut some carpet from the floor, giving up after a few minutes and leaving the house.

After two weeks of trial and more than eleven hours of deliberation, the jury convicted Mason of the murder of Thomas and Bailey but not Bass. On appeal, Mason challenges the introduction of certain evidence during his trial.

## II. ANALYSIS.

Mason challenges the admission of allowing four different pieces of evidence during trial. Generally, we review a trial court's evidentiary determinations for abuse of discretion—"whether the trial judge's decision was

3

arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[2]

But our standard of review may change depending on the specific type of error

alleged.

Additionally, "[n]o error in . . . the admission . . . of evidence . . . is

ground for granting a new trial or for setting aside a verdict or for vacating,

modifying or otherwise disturbing a judgment or order unless it appears to the

court that the denial of such relief would be inconsistent with substantial

justice."[3] "The court at every stage of the proceeding must disregard any error

or defect in the proceeding that does not affect the substantial rights of the

parties."[4] "[A] nonconstitutional evidentiary error may be deemed harmless if

the reviewing court can say with fair assurance that the judgment was not

substantially swayed by the error."[5] "[T]he inquiry is not simply 'whether there

was enough [evidence] to support the result, apart from the phase affected by

the error. It is rather, even so, whether the error itself had substantial

influence. If so, or if one is left in grave doubt, the conviction cannot stand."[6]

Finally, we note that the preservation of these issues for our review is

undisputed.

---

[2] *Lopez v. Commonwealth,* 459 S.W.3d 867, 872–73 (Ky. 2015).

[3] Kentucky Rules of Criminal Procedure ("RCr") 9.24.

[4] *Id.*

[5] *Murray v. Commonwealth,* 399 S.W.3d 398, 404 (Ky. 2013) (citing *Kotteakos v. United States,* 328 U.S. 750 (1946)).

[6] *Murray,* 299 S.W.3d at 404 (quoting *Kotteakos,* 328 U.S. at 765).

4

## A. Admission of Detective Holland's interviews of Everett Todd and Christopher Giddens

Todd and Giddens both testified live for the Commonwealth at Mason's trial. Following cross-examination, the Commonwealth sought to introduce Todd's and Giddens's separately recorded police interviews. The Commonwealth contended that during the cross-examination of both Todd and Giddens, Mason inaccurately characterized the actions of the interviewing officer as aggressive and improperly influential. The Commonwealth's entire rationale for seeking admission of this evidence was to do so under Kentucky Rules of Evidence ("KRE") 801A(a)(2), which admits prior-consistent-statement hearsay evidence if certain conditions are met. Over Mason's objection, the trial court allowed this evidence to be presented.

Mason argues, and the Commonwealth concedes, that the admission of Todd's and Giddens's video interrogations under KRE 801A(a)(2) for substantive purposes was erroneous. Regardless of whether the trial court may have erred, we are convinced that any purported error is harmless.

The result from the admission of Todd's and Giddens's video interrogations was that the jury heard twice essentially the same statements implicating Mason for the murders, once with Todd and Giddens on the stand and again in their video interrogations. Todd and Giddens essentially incriminated Mason on the stand in the same way they did during their police interrogations. This hardly rises to the level of needlessly cumulative evidence.[7]

---

[7] *See Daugherty v. Commonwealth*, 467 S.W.3d 222, 234 (Ky. 2015).

In sum, the introduction of Todd's and Giddens's video interrogations cannot be said to have "substantially swayed" the jury.

Although the trial court erred when it admitted Todd's and Giddens's video interrogations for substantive purposes under the prior-consistent-statements hearsay exception, we are convinced that the error was harmless.[8]

## B. Admission of Mason's interrogation

At trial, the Commonwealth sought to introduce video showing authorities' interrogation of Mason. The trial court admitted the video into evidence under KRE 801A(b)(1), which states: "A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is[] [t]he [p]arty's own statement[] in . . . an individual . . . capacity."

At the outset, we must clarify an apparent discrepancy as to our standard of appellate review of the trial court's decision about whether certain proposed evidence constitutes hearsay; and, if it is hearsay, whether any exceptions apply that would allow admission of that hearsay evidence. The parties have identified two different standards of review for this Court to use in its review of the trial court's determination. Mason suggests that we apply the

---

[8] The Commonwealth attempts to justify the inclusion of this evidence in a different way. The Commonwealth argues that, although this evidence should not have been admitted for substantive purposes, the trial court properly admitted the evidence for impeachment purposes. Moreover, although Mason blanketly objected to the admission of this evidence, the Commonwealth argues that Mason should have objected to the substantive use of this evidence and argued to the trial court that the evidence should only be used for impeachment purposes, which Mason did not do. But we do not reach the merits of this argument because we are satisfied that the trial court's error is harmless.

6

clearly erroneous standard of review, while the Commonwealth argues for an abuse-of-discretion standard of review.

Our precedent appears to provide the source of the confusion. In three different cases, we applied the clearly erroneous standard of review to evaluate the trial court's application of KRE 803(1),[9] (2),[10] or (3)[11];[12] KRE 803(2) and KRE 801A(a)(2)[13];[14] and KRE 803(2) and KRE 801A(a)(3)[15].[16] But we have also applied the abuse-of-discretion standard to evaluate the trial court's application of KRE 801A(b)(2)[17];[18] KRE 801A(b)(1)[19];[20] and KRE 801A(a)(2) and (b)(2).[21]

The source of the clearly erroneous standard of review appears to stem from *Young v. Commonwealth.* There, we stated:

> Whether a particular statement qualifies as an excited utterance depends on the circumstances of each case and is often an arguable point; and "when this is so the trial court's decision to admit or exclude the evidence is entitled to deference." That is but another way of saying that when the determination depends upon

---

[9] Present sense impression hearsay exception.

[10] Excited utterance hearsay exception.

[11] Then existing mental, emotional, or physical condition hearsay exception.

[12] *Ernst v. Commonwealth,* 160 S.W.3d 744, 752 (Ky. 2005).

[13] Prior consistent statement.

[14] *Noel v. Commonwealth,* 76 S.W.3d 923, 926–29 (Ky. 2002).

[15] Statement of identification of a person made after perceiving the person.

[16] *Young v. Commonwealth,* 50 S.W.3d 148, 166–67 (Ky. 2001).

[17] Admission by silence.

[18] *Moss v. Commonwealth,* 531 S.W.3d 479, 484 (Ky. 2017).

[19] Admission by a party opponent.

[20] *Lopez v. Commonwealth,* 459 S.W.3d 867, 872–73 (Ky. 2015).

[21] *King v. Commonwealth,* 2016-SC-000414-MR, 2018 WL 3933400, *11–14 (Ky. Aug. 16, 2018).

7

the resolution of a preliminary question of fact, the resolution is determined by the trial judge under KRE 104(a) on the basis of a preponderance of the evidence, and the resolution will not be overturned unless clearly erroneous, i.e., unless unsupported by substantial evidence.[22]

Attempting to discern whether the clearly erroneous or abuse-of-discretion standard of review should apply proves to be an exercise in futility. We can ascertain no principle from our precedent that mandates when one is to be used over the other. We can find no way of determining whether to use one standard over the other.

What we can definitively say is that the abuse-of-discretion standard has been used by this Court to evaluate this type of error more often and more recently than the clearly erroneous standard. In any event, both standards accomplish the same essential goal—giving proper deference to the evidentiary determination of the trial court.

A recently published law review article sheds light on the widespread discrepancy in how appellate courts review a trial court's determination of the admission or exclusion of purported hearsay evidence, finding that jurisdictions across the country use one of six different standards of review in evaluating the trial court's actions in this regard.[23] The author advocates for the use of the abuse-of-discretion standard above all others because that standard captures the appropriate deference a trial court should receive from appellate review, while still allowing for the appellate court to recognize a trial

---

[22] *Young*, 50 S.W.3d at 167.

[23] Todd J. Brown, *Say What?? Confusion in the Courts Over What is the Proper Standard of Review for Hearsay Rulings*, 18 Suffolk J. Trial & App. Advoc. 1, *5 (2013).

court's error in making a determination "unsupported by sound legal principles."[24]

Because our precedent more frequently and recently supports the use of an abuse-of-discretion standard to evaluate this kind of issue, because this standard is supported by legal scholars who have pondered this issue, and because this standard captures the necessary deference that should be afforded to trial courts for their evidentiary determinations while still allowing for appellate courts to find trial court errors for decisions made that are "unsupported by sound legal principles," we shall review the trial court's admission of purported hearsay evidence in the case at hand for abuse of discretion.

Mason argues that the trial court erred in admitting the entirety of the interrogation because the video predominantly shows only the detective speaking, with Mason "[doing] very little talking . . . . [A]side from some preliminary small talk and supplying some identifying information, he sits silently and listens while [the detective] outlines the case against him and challenges him to rebut the incriminating evidence . . . Mason spends long stretches of the encounter slumped in his chair, his chin drooping onto his chest, taciturn."

Mason's argument is meritless in all respects. Even if we were to accept as true his characterization of his interrogation and his allegation that the trial court erred, then admission of the video interrogation would be deemed

---

24 *Id.* at *53–54.

9

harmless because Mason did not incriminate himself in any way. All that the jury saw was a police officer interrogating Mason and Mason sitting silently. Such evidence cannot be deemed to have "substantially swayed" the jury because Mason said or did nothing to incriminate himself.

Regardless, our review of the video interrogation reveals that Mason did respond, both verbally and through body language, to a good portion of the officer's questioning. Even Mason admits in his brief that in this situation KRE 801A(b)(1) would allow the admission of the entirety of the relevant portions of the interrogation between the interviewer and Mason. And this Court has upheld the admission of different types of statements made by an interrogator "as proof of verbal acts" to lend context to the interrogation and to show why the defendant responded as he did.[25]

Finally, this Court has made clear that the defendant bears the burden of requesting an admonition from the court to instruct the jury that "an interrogator's statement [be] admitted only as evidence of context."[26] Although Mason did offer a general objection to the admission of the video interrogation, he never requested, in the alternative, the trial court to give a limiting instruction to the jury on the use of any portion of the interrogation.

The trial court did not err in admitting the entirety of Mason's interrogation video.

---

[25] *Walker v. Commonwealth,* 349 S.W.3d 307, 311 (Ky. 2011); *Lanham v. Commonwealth,* 171 S.W.3d 14, 19 (Ky. 2005).

[26] *Walker,* 349 S.W.3d at 312 (citing *Lanham,* 171 S.W.3d at 28).

## C. Admission of polygraph operator testimony

During defense counsel's cross-examination of Todd, defense counsel asked Todd about Todd's interviews with the detective: "And you had one with an associate of his? On the second interview." Todd responded, "I took a lie detector test." Defense counsel then asked Todd several other questions unrelated to the taking of the lie detector test. In response to one of defense counsel's questions about the detective's interview, Todd responded, "He read me my rights in regards to continuing with the investigation, prior to taking the lie detector test." Defense counsel then asked, "How'd you do on that lie detector test?" to which Todd responded, "Apparently I did well enough not to be charged with murder." Defense counsel then asked Todd about his "reaction" to two questions asked of him during the polygraph exam, stating that the officer found those reactions suspicious.

Defense counsel later inquired about some specifics regarding the polygraph exam and made statements about the exam, including: "And maybe you do or don't know this, the officer reported to him the machine reacted and those were you could call them lies, untruthful reaction, deceit . . . all these polygraph folks are different . . . that it was a reaction different than the other questions." Defense counsel also asked, "Do you remember him having a discussion with you that you were asked on the polygraph, 'Did you intend or expect to lie to the police?' and he said that got a reaction."

In rebuttal to defense counsel's examination of Todd, the Commonwealth proposed to introduce testimony from the polygraph operator who conducted

11

Todd's polygraph test. The Commonwealth argued that this testimony was necessary "to rebut the information brought out when [defense counsel] was questioning Mr. Todd" because the Commonwealth felt that defense counsel's cross-examination of Todd elicited testimony suggesting that Todd failed the test. The trial court, reluctantly and over defense counsel's objection, admitted the testimony.

Kentucky law is clear in its treatment of the admissibility, or rather better termed inadmissibility, of evidence relating to polygraph examinations.[27] But Kentucky law also clearly states that "'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof."[28] "The question in each case is not whether initial proof shares some common quality with proof offered in response. Rather, it is whether the latter answers the former, and whether it does so in a reasonable way without sacrifice of other important values."[29]

Simply put, Mason opened the door to allowing the Commonwealth's examination of the polygraph operator when defense counsel asked Todd several questions related to the conducting of the polygraph examination. Most

---

[27] *Conley v. Commonwealth*, 382 S.W.2d 865 (Ky. 1964); *Roberts v. Commonwealth*, 657 S.W.2d 943 (Ky. 1983); *McQueen v. Commonwealth*, 669 S.W.2d 519 (Ky. 1984). *See* Thomas L. Osborne, Trial Handbook for Ky. Law. § 32:23 (2017–2018 ed.) (collecting Kentucky decisions expounding on Kentucky's rules relating to the admissibility and inadmissibility of polygraph evidence).

[28] *Commonwealth v. Stone*, 291 S.W.3d 696, 701–02 (Ky. 2009).

[29] *Id.* at 702.

notably, defense counsel specifically asked Todd how he did on the exam. The admission of the polygraph examiner's testimony was justifiable because Mason asked Todd several questions relating to the propriety and substance of the exam. A review of defense counsel's questioning does suggest an attempt by defense counsel to call into question Todd's credibility by referencing Todd's allegedly deficient performance on the exam. The trial court did not abuse its discretion in allowing the Commonwealth to present the polygraph examiner's testimony because Mason's actions opened the door to such testimony.

Furthermore, we fail to see how the polygraph operator's testimony harmed Mason in any way. As Mason himself acknowledged, the substance of the polygraph operator's testimony on direct examination by the Commonwealth simply boiled down to describing the formal method for conducting and interpreting a lie detector test and confirming that Todd fell asleep between the first and second stage of the three-stage process, thus preventing the test from being completed and rendering the results inconclusive. It was Mason himself who elicited from the polygraph operator on cross-examination that the polygraph operator observed "a reaction" to two questions about Todd's involvement in the murders. Mason himself opened the door to the Commonwealth's inquiry on re-direct that allowed the polygraph examiner to clarify what "a reaction" meant and whether there was any indication that Todd lied when he answered the two questions.

Regardless of the general propriety of the admission of any evidence relating to a polygraph examination, Mason's actions during trial opened the

13

door to the admission of such evidence. We cannot say that the trial court erred in any respect on this issue.

## D. No reversible error occurred in this case

As held, the admission of the video interrogations of Todd and Giddens, while error, is harmless. The trial court did not err in admitting into evidence Mason's video interrogation. Finally, Mason invited any purported trial court error in admitting evidence related to Todd's polygraph examination.

Mason lastly argues that the purported errors in this case rise to the level of reversible cumulative error. Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair."[30] "We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial."[31]

We repeat our reasoning in *Brown* to explain why we do not find reversible cumulative error in this case: "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice."[32] Additionally, "[a]lthough errors crept into

---

[30] *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010).

[31] *Id.* (citing *Funk v. Commonwealth*, 842 S.W.2d 476, 483 (Ky. 1992)).

[32] *Brown*, 313 S.W.3d at 631 (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)).

14

this trial, as they inevitably do . . . they did not, either individually or cumulatively, render the trial unfair."[33]

Simply put, the errors that occurred in this case did not rise to the level of reversible cumulative error because we cannot say that anything the trial court did or failed to do rendered Mason's trial "fundamentally unfair."

### III.    CONCLUSION.

Finding no reversible error on the part of the trial court, we affirm the judgment.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Wright, JJ, concur. Venters, J., concurs in result only by separate opinion.

VENTERS, J., CONCURRING IN RESULT ONLY:  I concur with Chief Justice Minton's opinion, but I write to express an additional concern about what I find to be the sloppy designation of the applicable "standard of review" featured in many appellant opinions. Innumerable appellate opinions dutifully recite the phrase, "we review a trial court's evidentiary rulings for abuse of discretion," often without seriously examining the application of the phrase to the issue at hand. The phrase is simply incorrect. *Some* evidentiary rulings fall within the scope of a trial judge's discretion, but many do not.  I would abandon the phrase altogether as it is imprecise, confusing, and has become meaningless with overuse.

---

[33] *Brown*, 313 S.W.3d at 631.

We give great deference to the trial court's discretion with respect to the findings of fact essential to an evidentiary ruling or to the relative weight to be given to those facts, including the weighing of the probative value of evidence. But evidentiary rulings which interpret and apply the Kentucky Rules of Evidence are matters of law that we must review de novo. We give no deference to a trial judge's decision on what the law is.

Our traditional articulation of the abuse of discretion standard is given in *Commonwealth v. English*: "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." 993 S.W.2d 941, 945 (Ky. 1999). Embedded within that statement is the concept of errors of law which we do not review for abuse of discretion. Whether a trial judge's decision is "unsupported by sound legal principles" is a question to which we give no deference; we review it de novo.

When addressing its review of an issue of evidentiary error, the appellate courts should articulate the proper stand applicable to the specific kind of evidentiary error involved, rather than lumping all allegations under the generic category of "evidentiary error" and saying, incorrectly, that they are all reviewed for abuse of the trial court's discretion.

COUNSEL FOR APPELLANT:

Michael Romano Mazzoli
Cox & Mazzoli, PLLC

Frank Mascagni III

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Jeffrey Allan Cross
Assistant Attorney General