RENDERED: MAY 13, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0792-MR

CORY M. WILLIAMS                                         APPELLANT


APPEAL FROM OHIO CIRCUIT COURT
v.                 HONORABLE TIMOTHY R. COLEMAN, JUDGE
ACTION NO. 18-CR-00347


COMMONWEALTH OF KENTUCKY                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND McNEILL,
JUDGES.

McNEILL, JUDGE: Cory M. Williams ("Williams") appeals from the judgment
of the Ohio Circuit Court convicting him of second-degree assault and sentencing
him to five years' imprisonment. Finding no error, we affirm.

This case stems from an assault committed by Williams upon Spencer
Turner ("Turner") in the early morning hours of October 14, 2018, outside of
Williams' home. Prior to the assault, Williams was in Ohio for several days

- 1 -

attending a training for his job as a coal miner. Williams' girlfriend, Tameicka Cobb ("Cobb"), and her two-year-old daughter accompanied Williams to the training.

At some point, Williams and Cobb got into an argument and according to Cobb, Williams kicked her and her daughter out of the hotel room.[1] Cobb called Turner, who arranged for a room at the hotel and offered to drive to Ohio to pick Cobb up and drive her back to Kentucky. Turner arrived early the next morning and after spending the day in a nearby town, the group headed home.

Back in Kentucky, Turner took Cobb to retrieve her belongings from Williams' house. According to Turner, as he was helping load bags into his vehicle, Williams got in his face and challenged him to fight. Turner declined and turned his back to Williams to adjust his seat so that he could leave. As he turned to face Williams, Williams punched him in the nose. Turner testified that Williams hit him in the face around six times, and that each time he could hear bones in his face breaking. Cobb confirmed that Williams was the aggressor and that Turner never hit Williams. Because of the assault, Turner suffered multiple broken and displaced bones in his face and later underwent surgery to repair his injuries.

Williams was indicted for second-degree assault and was tried on February 19-20, 2020. Following the evidence, he was convicted of second-degree

---

[1] Williams testified that Cobb left the room by choice.

assault and sentenced to five years' imprisonment. This appeal followed. Further facts will be set forth as necessary below.

Williams first argues on appeal that the trial court improperly admitted evidence of a prior bad act in violation of KRE[2] 404(b). At trial, the Commonwealth introduced evidence of an incident where Williams damaged a truck belonging to the father of Cobb's child after learning Cobb was visiting him. The Commonwealth responds that the evidence was relevant to show motive and Williams' jealously. As an initial matter, we note that this error was not properly preserved for review. Prior to trial, Williams filed a motion *in limine* to exclude the evidence but the trial court reserved ruling on the motion. Therefore, the motion was not "resolved by order of record," as required by KRE 103(d) to preserve the error for appellate review. It was imperative on Williams to make a contemporaneous objection at trial to preserve the issue, which he did not do. *See Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002) (citing RCr[3] 9.22) ("[A] litigant must contemporaneously object to preserve an error for review."). We, therefore, review only for palpable error resulting in manifest injustice, pursuant to RCr 10.26.

---

[2] Kentucky Rules of Evidence.

[3] Kentucky Rules of Criminal Procedure.

"The palpable error rule allows reversal for an unpreserved error only when 'manifest injustice has resulted from the error.'" *Elery v. Commonwealth*, 368 S.W.3d 78, 98 (Ky. 2012) (citing RCr 10.26). "This requires a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* (internal quotation marks and citation omitted). In other words, "[t]o find manifest injustice, the reviewing court must conclude that the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017) (citation omitted).

"Generally, evidence of prior threats and animosity of the defendant against the victim is admissible as evidence of motive, intent or identity, whereas evidence of prior threats or violence against an unrelated third-party is generally regarded as inadmissible character evidence[.]" *Davis v. Commonwealth*, 147 S.W.3d 709, 722 (Ky. 2004), *as modified* (Jan. 25, 2005) (internal citation omitted). Assuming, without deciding, that admission of the KRE 404(b) evidence was error, it was not palpable error. The evidence of Williams' guilt was substantial. Both Cobb and Turner testified that Williams approached Turner while Turner was loading Cobb's possessions into the vehicle. Both similarly testified that it was Williams who punched Turner and was the aggressor and that Turner never made any threatening movements towards Williams. We cannot say

"there is a 'substantial possibility' that the result in the case would have been different without the error." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citation omitted).

Williams next argues that the trial court erred in admitting highly prejudicial photographs of Turner's surgery, citing *Hall v. Commonwealth*, 468 S.W.3d 814 (Ky. 2015). "We review a trial court's ruling on the admission of evidence for abuse of discretion." *Breazeale v. Commonwealth*, 600 S.W.3d 682, 692 (Ky. 2020) (citation omitted). "A trial court abuses its discretion when it rules in a way that is arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted).

During the testimony of Dr. Benjamin Kittinger, who performed the surgery to repair Turner's facial injuries, the Commonwealth introduced four photographs taken during the procedure. According to Dr. Kittinger, Exhibit 12 showed how he got "to the cheekbone through the lower eyelid incision" and showed the "lower aspect of the eye socket with the plates and screws in place holding it exactly like we wanted it."

Exhibit 11 and 14 were almost identical, both showing "the plate and screw fixation we did along that broken [cheekbone,]" with Exhibit 14 being a close-up photo. The photos showed how the doctor accessed the cheekbone by making an incision from ear to ear and folding the skin of the face down. Exhibit

13 showed how the doctor got "to [the] cheekbone through the upper lip on the inside of the mouth" and demonstrated how the "plates and screws are placed to secure the fracture of the cheekbone [back] to the upper jawbone."

Williams argues that the probative value of these photos is minimal considering that Dr. Kittinger, Turner, and his mother all testified at length to the extent of Turner's injuries. Further, he argues the risk of prejudice is high because of the graphic nature of the photos.

We begin our analysis by noting that *Hall v. Commonwealth* mandated that trial courts first conduct a KRE 403 balancing test before ruling on the admissibility of an arguably gruesome photograph. 468 S.W.3d 814, 823 (Ky. 2015). That is, the trial court must assess the probative value of each photograph against its possible prejudicial effect and determine whether the prejudicial effect is substantially outweighed by the photo's probative value. *Id.*

However, "[a]s a general rule, photographs of a gruesome or graphic nature are not rendered inadmissible solely because of their gruesomeness." *Ragland v. Commonwealth*, 476 S.W.3d 236, 248 (Ky. 2015) (citation omitted). Further, in evaluating graphic photos, our Supreme Court has said, "[b]ecause the Commonwealth must prove the *corpus delicti*, such photographs are relevant to show the nature of the injuries inflicted by the defendant upon the victim." *Ernst*

*v. Commonwealth*, 160 S.W.3d 744, 757 (Ky. 2005), *overruled on other grounds by Mason v. Commonwealth*, 559 S.W.3d 337 (Ky. 2018).

Here, the trial court determined that any prejudicial effect of the photos was outweighed by their probative value in showing the extent of Turner's injuries. Unlike in *Hall*, the Commonwealth only sought to introduce four photographs, not twenty-eight. Further, the photographs were not needlessly cumulative, with only one showing the same subject matter; however it was a close-up that provided greater detail of the screws and plates necessary to repair Turner's injuries due to the assault.

The photos were not offered merely to inflame the jury but were utilized by Dr. Kittinger to explain the extent of Turner's injuries as well as the measures undertaken to treat them. While graphic, the photos are no way in the "upper echelon of gruesome photos" like the ones in *Hall*, 468 S.W.3d at 827. These were photos of a living human during surgery, not mangled corpses or graphic autopsy photos. *Id.* at 821-22. We therefore hold the trial court did not abuse its discretion in admitting the surgery photos.

Based upon the foregoing, the judgment of the Ohio Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky