RENDERED:  JANUARY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1265-MR

MARCUS LEWIS                                                           APPELLANT


APPEAL FROM HART CIRCUIT COURT
v.          HONORABLE JOSEPH G. BALLARD, JUDGE
ACTION NO. 20-CI-00178


CECIL F. MARTIN (KNOWN AS C.F.
MARTIN); AVA BRONER;
FRANKLIN C. MARTIN; HAROLD
DUANE THOMAS; JASON TODD
MARTIN; KATHY BRONER
TUCKER; MARTIN LEWIS; TODD
TUCKER; UNKNOWN HEIRS OF
FRANKLIN C. MARTIN; UNKNOWN
HEIRS OF JASON TODD MARTIN;
UNKNOWN SPOUSE OF CECIL F.
MARTIN; UNKNOWN SPOUSE OF
JASON TODD MARTIN; AND VICKI
BRONER THOMAS                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Appellant Marcus Lewis ("Lewis"), *pro se*, appeals the Hart Circuit Court's ("trial court") denial of his motion for discovery sanctions against Appellee C.F. Martin ("Martin").[1]  Additionally, Lewis appeals the trial court's ruling excluding Lewis's testimony on damages as inadmissible hearsay and the subsequent order granting Martin's motion for directed verdict on punitive damages.

## I.    FACTUAL AND PROCEDURAL HISTORY

In December 2007, Martin purchased a 40-acre parcel of land at a Master Commissioner's sale ("Purchased Property").  There was a three-acre tract of land adjacent to the Purchased Property ("Adjacent Property"), which was not included in that conveyance.  However, the previous owners of the Purchased Property had utilized the Adjacent Property; therefore, Martin believed he too acquired rights to that land.  When Martin acquired the Purchased Property, the Adjacent Property was overgrown with briars and bushes, contained a dilapidated barn, and had only a small portion of perimeter fencing.  As Martin thought the Adjacent Property was included in the Master Commissioner's sale, he razed the barn, cleared the land, fenced the full three-acre tract, and used it as grazing land.

---

[1] The underlying suit was a property dispute; therefore, the appellees include numerous former and current owners of the purchased property.  For ease of reference, we will use the named owner, Martin, to represent all appellees.

Twelve years later, in March 2019, Lewis filed the underlying action to quiet title to the Adjacent Property and for damages. Lewis claimed $10,000,000 in punitive damages and $661,458.86 in compensatory damages, citing the razed barn, illegal grazing fees, and trespass damages. The trial court ordered the parties to submit pretrial compliance statements on September 9, 2022; however, Martin submitted his five days late, on September 14, 2022.[2] Lewis then filed a motion for sanctions against Martin based on the untimeliness of his pretrial filing. The morning of trial, Lewis argued that motion, claiming that Martin's pretrial compliance was untimely and incomplete;[3] therefore, witnesses listed in the compliance statement should not be permitted to testify, exhibits should not be admitted, and default judgment should be entered against Martin.

Martin responded that he complied with the trial court's order and had given Lewis full notice of what he planned to present at trial. Martin simply did not include items that did not apply to him, *e.g.*, Martin was not claiming damages, so he did not include an itemization of damages. The trial court asked Lewis how he had been prejudiced by the five-day delay in receiving the compliance statement. Lewis did not provide an answer regarding prejudice – and

[2] Martin stated that he believed – "perhaps incorrectly" – that the compliance was due before the scheduled pretrial conference on September 16, 2022.

[3] Lewis argued Martin's statement did not contain Lewis's statement of the claim (Ky. R. Hart Larue Circuit Court ("KHLRC"), Ch. 1, F(1)(a)), Martin's statement of defenses (KHLRC, Ch. 1, F(1)(d)), or an itemization of damages (KHLRC, Ch. 1, F(1)(g)).

acknowledged that he had received all exhibits from Martin – but simply stated that the parties must strictly comply with discovery rules. The trial court explained that Lewis needed to show how he was harmed by any noncompliance, which he failed to do. As such, the trial court denied the motion.

At trial, only Lewis testified on behalf of his claims. In part, he attempted to testify regarding a conversation he had with an "expert" online who gave him an estimate for constructing a new barn. However, Lewis failed to call that "expert" as a witness; therefore, the trial court found any testimony regarding such conversations were inadmissible hearsay. Additionally, Lewis read into the record a letter he had written to Martin in which he claimed $1,800 per year in grazing fees, but he tendered no evidence to support that claim. Lewis presented no other evidence on damages. As such, following Lewis's case-in-chief, Martin filed for directed verdict on punitive and compensatory damages, claiming Lewis failed to present evidence to support such a verdict. The trial court agreed, in part, and granted Martin's motion as to punitive damages; however, the trial court allowed the issue of compensatory damages to be submitted to the jury.

Martin; Joe Logsdon, a local businessowner and farmer ("Logsdon"); and Randy Sexton, the property appraiser ("Appraiser Sexton"), testified regarding the condition of the Adjacent Property at the time Martin bought the Purchased Property. Logsdon testified that the barn on the property was "ready to fall," with

the roof partially gone, and of no value to the land. He explained that he believed the absence of the barn was an asset because such barns are "not usable" in today's agriculture. Appraiser Sexton considered the state of the Adjacent Property prior to the barn's removal and the land development and testified that there was no reduction in the fair market value of the Adjacent Property as a result of Martin's actions. Instead, Appraiser Sexton testified that the barn removal added value to the Adjacent Property.

The trial court instructed the jury that if it found Lewis to be the owner of the Adjacent Property, it must then award compensatory damages, if any, and nominal damages, if any. The jury found that Lewis and his co-owners were the rightful owners of the Adjacent Property; however, it found Lewis was entitled to $0 in compensatory damages. The jury awarded $1,000 in nominal damages to Lewis. The trial court entered judgment accordingly and ordered the perimeter fencing to be removed from the Adjacent Property.

Lewis appeals, arguing the trial court erred when it denied his motion for discovery sanctions, found his testimony regarding damages to be hearsay, and granted Martin's motion for directed verdict regarding punitive damages.

## II.    STANDARDS OF REVIEW

This Court reviews a trial court's denial of discovery sanctions for abuse of discretion. *Rumpel v. Rumpel*, 438 S.W.3d 354, 361 (Ky. 2014) (citing

-5-

*Turner v. Andrew*, 413 S.W.3d 272, 279 (Ky. 2013)). Similarly, we review the trial court's evidentiary finding that Lewis's testimony on damages was inadmissible hearsay for an abuse of discretion. *See Rucker v. Commonwealth*, 521 S.W.3d 562, 569 (Ky. 2017) (citation omitted).[4] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

As to Martin's motion for directed verdict, this Court reviews for clear error. *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998).

> On a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous.

*Id.* (citations omitted).

---

[4] While there is some inconsistency in whether to use the abuse of discretion or clearly erroneous standard of review, our Supreme Court has explained, "we can definitively say . . . the abuse-of-discretion standard has been used by this Court to evaluate this type of error more often and more recently than the clearly erroneous standard. In any event, both standards accomplish the same essential goal – giving proper deference to the evidentiary determination of the trial court." *Mason v. Commonwealth*, 559 S.W.3d 337, 342 (Ky. 2018). As such, we use the abuse of discretion standard of review.

## III.    ANALYSIS

### A.    Discovery Sanctions

First, Lewis argues that the trial court erred when it denied his motion for sanctions – namely, default judgment – against Martin.  Lewis reiterates his pretrial argument:  that the language of local rule Ky. R. Hart Larue Circuit Court ("KRHLC"), Ch. 1 General, F(2) mandates that a court sanction a noncompliant party during discovery.[5]  However, the rules are not as draconian as Lewis would suggest.  The local rule provides that "[f]ailure of parties to strictly comply with the terms of this rule *may* result in dismissal of claims, default judgment, refusal to let witnesses testify or to admit exhibits, assessment of costs and expenses, including attorney fees, or other appropriate sanctions."  KHRLC, Ch. 1, F(2) (emphasis added).[6]

---

[5] Lewis also reiterates his pretrial argument that Martin did not comply with KRHLC Ch. 1, F(1) when he filed an "incomplete" statement; however, the trial court agreed with Lewis on that ground.  As such, there is nothing for this Court to review regarding the noncompliance itself; only the trial court's decision to deny sanctions despite the noncompliance.

[6] Additionally, Lewis presents a new argument:  Martin should have filed a motion for leave to submit his untimely statement.  Because he did not file such a motion, Lewis argues the trial court erred when it permitted the statement.  However, because Lewis did not present that argument to the court below, it is not properly before this Court for review.  *See Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010) (finding the lower court's failure to address an issue meant that issue was "not properly preserved for appellate review").

This Court has held that discovery sanctions of this nature "are governed by Kentucky Rule of Civil Procedure (CR) 37.02[7] and are within the trial court's discretion." *Morton v. Bank of the Bluegrass & Tr. Co.*, 18 S.W.3d 353, 360 (Ky. App. 1999) (citing *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 118 (Ky. App. 1998)). There, a party contended that the trial court erred when it failed to impose sanctions on a party that destroyed documents which the court had ordered to be produced. *Id.* However, this Court explained that the "trial court was in the best position to determine if [the party's] conduct warranted imposition of sanctions." *Id.* Therefore, this Court held that the trial court did not abuse its discretion by not sanctioning the aggrieved party. *Id.* Likewise, here, the trial court was in the best position to determine whether Martin's noncompliance warranted sanctions, and it did not err by finding that it did not.

### B. Alleged Due Process Violations

Next, Lewis argues that the trial court violated his due process rights when it found his testimony (and corresponding exhibit) regarding damages was inadmissible hearsay and granted a directed verdict on punitive damages. Lewis contends that the trial court's ruling on hearsay "prevented [him] from presenting the damage portion of his case to the jury at all." As a result, Lewis argues, Martin was able to successfully move for directed verdict on punitive damages.

---

[7] CR 37.02 is the statewide rule regarding discovery sanctions.

Kentucky Rule of Evidence 801(c) provides that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Lewis was attempting to present statements someone else made to him online regarding costs to rebuild a barn, *i.e.*, to prove his claim for damages. However, Lewis did not present that person at trial to testify regarding that conversation; therefore, the trial court found such statements were inadmissible hearsay. We agree. Likewise, Lewis's attempt to submit a printout of that conversation was inadmissible hearsay.

While Lewis is clearly frustrated by the trial court's decision to exclude his testimony, he provides no argument as to how the trial court abused its discretion in doing so. As discussed, "[t]rial courts enjoy substantial discretion in admitting or excluding evidence at trial. Indeed, there are many instances where a trial court will not err regardless of whether the evidence is admitted or excluded because of this broad discretion." *Daugherty v. Commonwealth*, 467 S.W.3d 222, 231 (Ky. 2015). This Court cannot disturb the trial court's decision unless it abused that discretion. *Id.* (citing *Major v. Commonwealth*, 177 S.W.3d 700, 710 (Ky. 2005)). As such, we cannot disturb the trial court's decision to exclude his testimony and proposed exhibit on damages.

As to Lewis's motion for directed verdict, again, Lewis fails to provide an argument as to how the trial court erred. Lewis simply states that the

ruling violated his "due process and was prejudicial to [Lewis] in fully presenting his case to the jury." However, a trial judge is generally permitted to enter a directed verdict when "there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Bierman*, 967 S.W.2d at 18-19.

Here, the material issue was punitive damages. KRS 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." Subsections (1)(a) and (b),[8] respectively, define oppression and fraud: "Oppression means conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship[,]" and "Fraud means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff."

Lewis failed to provide evidence that Martin caused damage to his property, much less that Martin acted with the requisite intention to harm Lewis. As noted, only Martin's witnesses presented evidence regarding the values of the

---

[8] "In *Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998), the Supreme Court of Kentucky declared KRS 411.184(1)(c), containing a definition of malice, to be in violation of the jural rights doctrine and unconstitutional." *Pezzarossi v. Nutt*, 392 S.W.3d 417, 420 n.2 (Ky. App. 2012).

Adjacent Property before and after Martin's actions. Logsdon had testified that the barn provided no value to the land and that removing the barn actually improved it. Likewise, Appraiser Sexton testified that there was no reduction in the fair market value of the Adjacent Property as a result of Martin's actions. Martin's removal of the barn added value to the Adjacent Property. Lewis did not present any evidence to refute such claims, nor did Lewis provide evidence even suggesting Martin acted with oppression or fraud. This Court "must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party." *Bierman*, 967 S.W.2d at 18. Therefore, we cannot find that the trial court erred when it granted the directed verdict as to punitive damages.

Finally, despite earlier arguments to the contrary, Lewis now argues the perimeter fencing that Martin erected on the Adjacent Property should remain in place because "it now belongs to him" (as it is on his property). We disagree. In Lewis's initial pleadings, he sought removal of the fence and complained of Martin's trespass. Upon the verdict that the property was Lewis's and Martin had trespassed, the trial court ordered the removal of the fence to remedy Martin's action. It did not abuse its discretion by ordering what Lewis had requested.

## CONCLUSION

The trial court did not abuse its discretion when it denied Lewis's motion for discovery sanctions against Martin and excluded Lewis's testimony on

barn costs as hearsay.  Likewise, the trial court did not err when it granted Martin's motion for directed verdict.  As such, the Hart Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEES:

Marcus Lewis, *pro se*                         Bobby H. Richardson
Chicago, Illinois                                    Glasgow, Kentucky